ORIGINAL

FILED

2018 MAR 22 P 12: 28

SUSAN Y.
CLERK, U.S. DIS
NO. DIST. O

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

-------------------------------------------------------X

JEFFERY DEAN BLACK, IN PRO PER

Plaintiff,

    -against-

IRVING MATERIALS, INC.,

Defendant.

-------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

17-CV-06734 SZ



### COMPLAINT

Plaintiff, Jeff Black, for his Complaint against defendant Irving Materials, Inc. alleges:

### NATURE OF THE SUIT

1.    This action by Plaintiff Jeff Black ("Mr. Black" or "Plaintiff") seeks actual and/or statutory damages, and a finding of Mr. Black's lack of bad faith intent under the Anticybersquatting Consumer Protection Act, and a finding that Defendant engaged in reverse domain name hijacking under the Anticybersquatting Consumer Protection Act by attempting to steal Mr. Black's IMI.com domain name.

2.    2. Plaintiff brings this action to prevent the transfer of a domain, IMI.COM (herein "the DOMAIN") to Defendant IRVING MATERIALS, INC. (herein "Defendant" or "Irving Material"), and to obtain a declaration of lawful use of the domain name under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1114 (2)(D), and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. By its Complaint, Plaintiff seeks declaratory relief, as set forth below, to establish that its registration and use of the domain name IMI.COM is not unlawful under the Lanham Act (15 U.S.C. § 1051 et. Seq.) and that it is the rightful and proper

owner of said domain name. Subject matter jurisdiction is also proper under 28 U.S.C. § 1331, § 1338 and § 2201 and 15 U.S.C. § 1121 because this action involves a federal question arising under 15 U.S.C. § 1114(2)(D)(iv) and (v), and 15 U.S.C. § 1125(d). Plaintiff also seeks to prevent the transfer of the IMI.COM Domain Name to Defendant, which was ordered in an administrative panel decision notified on November 7, 2017 under the Uniform Domain Name Dispute Policy ("UDRP"), as prescribed by of the Internet Corporation for Assigned Names and Numbers ("ICANN"), in a proceeding before the National Arbitration Forum (the "FORUM") under Claim Number FA1710001753342.

## PARTIES

3. Mr. Black is now at 405 El Camino Real #611, Menlo Park, CA 94025.

4. Irving Materials, Inc. ("Defendant") is 8032 North State Road 9, Greenfield, IN 46140.

## JURISDICTION AND VENUE

5. This is a civil action arising under the Lanham Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

## FACTUAL BACKGROUND

6. Mr. Black registered the IMI.com domain name on March 15, 1994.

7. Mr. Black was not aware of the existence of Defendant or its claimed trademark rights when Mr. Black registered the IMI.com domain name on March 15, 1994.

8. The IMI.com domain name is not configured to display a website that suggests that the site is operated by or affiliated with Defendant.

9. The IMI.com domain name is not configured to display a website with actual

2

products or services related to Defendant's IMI trademark, such as those actual products and services provided by Defendant.

10.     Until recently, the IMI.com domain name displayed a business directory of companies with URL pointers for people to click on to find companies that use the IMI acronym in their business. This directory was run as a not-for-profit activity, meaning no revenue of any kind was ever derived from this activity.

11.     The IMI.com domain name has never run pay-for-ads or pay-for-clicks as Defendant has claimed.

12.     Mr. Black incorporated a business called, "Internet Marketing Inc." on April 6, 1994. The business carried the initials, "IMI".

13.     Mr. Black was the owner of Internet Marketing Inc. and his company sold products and services mainly to Internet Service Providers ("ISPs") and certain government agencies.

14.     Mr. Black licensed his domain name to his new company Internet Marketing Inc. at no charge to the company, but retained ownership of the domain in case the company was ever acquired by another company and the domain name was not required to be part of the acquisition.

15.     Mr. Black registered his domain and created his company nine (9) years before Defendant registered its trademark.

16.     Mr. Black has used this domain name in commerce (e.g. for email, etc.) and/or as the not-for-profit directory for over twenty-three (23) years without a single challenge from Defendant or any of the eleven (11) other active IMI trademark owners listed by the USPTO.

17.     Mr. Black also incorporated a new company by the name of International

3

Monetary Investments LLC in November of 2016. This company name was chosen specifically because Mr. Black owned the <IMI.COM> domain name.

18.     Defendant has a trademark IMI that is restricted to the following areas of use according to the USPTO database: "Concrete and construction aggregates namely sand, gravel, stone and concrete" (aka, the "Materials Space").

19.     Mr. Black has never conducted any business in the Materials Space, via use of the domain name or otherwise.

20.     Mr. Black has a twenty-three (23) year history of common law use of the IMI name with no challenges to date, except Defendant's recent claim.

21.     Mr. Black did not have at the time of registration, and does not now have, an intent to divert consumers from Defendant's online location to a website that could harm Defendant's goodwill represented by Defendant's trademark.

22.     At no time did Mr. Black approach Defendant seeking to sell the IMI.com domain name to Defendant.

23.     This WHOIS database still lists Mr. Black's first company name under the ADMIN Contact details.

24.     Since the date of Mr. Black's acquisition of the IMI.com domain name in March 15, 1994, the IMI.com domain name registration has at all times reflected accurate contact information identifying Mr. Black as the owner of the domain name.

25.     The Defendant's frivolous, bad faith Complaint has prevented Mr. Black from timely modifying its website, which is hosted by NSI, which has prevented Mr. Black's newest venture from closing several business transactions.

26.     Defendant's UDRP Complaint was not contested by Mr. Black, because he never

4

received notice of it from the National Arbitration Forum or otherwise, until a decision was rendered which ordered the domain name to be transferred.

27.     In the UDRP Proceeding, it was stated, "Respondent has no rights or legitimate interests in the <imi.com> domain name." This is a false statement based on the facts above. Mr. Black registered the name and used the domain name (both Website and email server address) in commerce for nine (9) years before Defendant filed for a trademark registration.

28.     In the UDRP Proceeding, Defendant stated, "Respondent is not commonly known by the disputed domain name, nor has Complainant authorized, licensed, or otherwise permitted Respondent to use the mark." This is a false statement also. Mr. Black's company was well known in the internet arena for nine (9) years before defendant filed for a trademark in their restrictive Materials Space. Internet Marketing Inc. (IMI) spoken at many conferences around the world about its products and services under the IMI name.

29.     In the UDRP Proceeding, it was stated, "Respondent also does not use the disputed domain name in connection with a bona fide offering of goods or services or legitimate noncommercial or fair use." This is a false statement as Mr. Black used the IMI name and the IMI.COM domain name initially in commerce to sell products, data and services to ISPs and certain government agencies. Mr. Black also has many business agreements already signed in commerce under his new IMI company name since 2016. All other uses in the middle of the domain name ownership have been noncommercial, and unrelated to Defendant or the Materials Space.

30.     In the UDRP Proceeding, it was stated, "Respondent uses the domain name to redirect Internet users interested in Complainant's products to a website featuring links to various businesses and commercial organizations". However, the domain name has never listed

5

competing companies in the Materials Space within the business directory, nor has Mr. Black or any of his companies ever made any commercial use of that business directory. This directory was simply setup, in good faith, to help people find the "IMI" company they were seeking on the internet (whether that was Defendant or any of the others).

31.    In the UDRP Proceeding, it was stated, "Respondent registered and uses the IMI.COM domain name in bad faith". This is also false as Mr. Black registered the domain name IMI.COM nine (9) years before Defendant registered its trademark and since 2003, Defendant has never complained of infringement or even requested that its company's information be removed from our business directory. To be sure, Mr. Black incorporated a valid company called Internet Marketing Inc. within 30 days of registering his domain name and that company created and sold information and services in the market for profit. Lastly, Mr. Black's company, Internet Marketing Inc. spun out several well-known websites and/or companies during its years of operation.

32.    In the UDRP Proceeding, it was stated, "Respondent uses the domain name to trade upon the fame and goodwill of the IMI mark…" This is false.  Mr. Black has never tried to profit from any trademark or products offered by any company with the IMI initials, except his own. In general, Mr. Black's company called IMI was very popular in the internet space as it was the only company in the world to track every domain, webserver and router on the internet and then cross that information with the USPTO's business information. This was highly sought-after information in the early days of the internet. This process of "Dynamically Categorizing Entity Information" was so powerful and novel in the early days of the internet that Mr. Black was awarded several patents by the USPTO that are fundamental to operating any internet search engine, an online yellow page directory and internet mapping applications.  Mr. Black would

6

venture to say that its use of the IMI name in the 1990s was probably better known globally than Defendant's use of the IMI name even today.

33.     In the UDRP Proceeding, it was stated, "Respondent has used the domain name to redirect Internet users interested in Complainant's products to a website featuring links to various businesses and commercial organizations". This is false.  The IMI.COM website until recently was a noncommercial business directory that helps people find certain companies. Example: For years, the popularity of the IMI.COM domain name and the way search engines worked, when a user typed in the term "IMI", it would resolve to those domain names first, and then based on the linkage (or popularity) of the keywords, the rest of the search results would be displayed. Therefore, Mr. Black's noncommercial business directory, in a lot of cases, would help people on the internet find their desired website faster than searching for the company in question, as then a company's website might be listed on page 15 of the search results vs. our site which displayed them on top. Therefore, this was beneficial to these companies and this is probably why none of the companies have ever requested to be de-listed to date, not even Defendant.

34.     In the UDRP Proceeding, it was stated, "the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights". This is false as the Defendant does not have any rights outside of the Materials Space, per the USPTO's database.

35.     In the UDRP Proceeding, it was stated, "Complainant also claims it holds common law rights in the IMI mark along with the trademark registration". This is true but omits the fact that Defendant ONLY has rights in the Materials Space. Mr. Black's use of the IMI domain name is not an infringement; indeed, his common law use of the name long predated

7

Defendant's trademark registration.

36.    In the UDRP Proceeding, it was stated, "Respondent has chosen to take Complainant's trademark and to use it in the disputed domain name…" This is false as Mr. Black registered the domain name IMI.COM nine (9) years before Defendant filed for a trademark registration. Therefore, Mr. Black could not know what Defendant would do nine (9) years in the future. This is impossible.  Moreover, Defendant's trademark rights have never extended beyond the Materials Space, and Mr. Black has never conducted any commercial activity in the Materials Space.

37.    In the UDRP Proceeding, it was stated, "The WHOIS identifies "Black, Jeff / PartnerVision Ventures" as the registrant. Complainant submits that no evidence exists to show that Respondent has ever been legitimately known by the IMI mark. Panels may use these assertions as evidence of lacking rights or legitimate interests." The Defendant and/or Attorney for the Defendant was very disingenuous here to ONLY mention the Registrant name within the complaint and purposely OMIT the Admin and Technical contacts within the same listing as they CLEARLY show Mr. Black's original company's name, "Internet Marketing Inc.". This was hidden by the Defendant and/or his attorney from the Panel Judge to make the Judge believe something that they knew to be false. In addition, Mr. Black saw a LinkedIn pop-up message that someone of the Defendant's law firm had looked at his LinkedIn profile which clearly show the historical use of the IMI name. This link is: https://www.linkedin.com/in/blackjeff

38.    In the UDRP Proceeding, it was stated, "Complainant also argues that Respondent uses the disputed domain name to resolve to a website that contains a series of hyperlinks redirecting users to services that directly compete with Complainant, presumably to benefit commercially from pay-per-click fees." This is a false statement as this domain name or website

8

has NEVER displayed any type of free or paid for advertising. This was a bald lie by the Defendant and/or his attorney, attempting to mislead the Panel Judge to believe that Mr. Black was trying to profit off of Defendant, which is not true. This was willful on Defendant's part to mislead the Panel Judge.  And the Panel Judge was negligent to accept such an assertion without any proof whatsoever, and yet still order the transfer of Mr. Black's extremely valuable domain name.

39.    In the UDRP Proceeding, it was stated, "Using a domain name to offer links to services in direct competition with a complainant does not constitute a bona fide offering of goods or services or a legitimate noncommercial or fair use." This is a false suggestion as the noncommercial Business Directory in question has never listed any competitors to the Defendant.

## COUNT I
### DECLARATORY RELIEF -- NO BAD FAITH INTENT/CYBERPIRACY
### (15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1)(B)(ii))

40.    Mr. Black realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

41.    The actions described above evidence the absence of bad faith, within the meaning of the Anticybersquatting Consumer Protection Act, by Mr. Black as owner of the IMI.com domain name.

42.    The actions described above evidence a good faith belief by Mr. Black that the registration and use of the IMI.com domain name was a fair use or otherwise lawful.

43.    The actions described above evidence reasonable grounds for belief by Mr. Black that the registration and use of the IMI.com domain name was a fair use or otherwise lawful.

44.    Mr. Black is entitled to a judgment of no bad faith intent in the registration or use

9

of the IMI.com domain name.

45.    Defendant's conduct has harmed and will continue to harm Mr. Black, thereby entitling Mr. Black to recover actual and/or statutory damages.

**COUNT II**
**REVERSE DOMAIN NAME HIJACKING**
**(15 U.S.C. § 1114(2)(D)(iv))**

46.    Mr. Black realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

47.    Mr. Black's registration and use of IMI.com is entirely proper and lawful.

48.    Defendant's UDRP filing represents a knowing and material misrepresentation that the IMI.com domain name is a bad faith use of Defendant's trademarks.

49.    Defendant's UDRP filing and the allegations of cybersquatting set forth therein represent a knowing and material misrepresentation that the IMI.com domain name is identical to, confusingly similar to, or dilutive of Defendant's mark.

50.    Defendant's UDRP filing and communications to Mr. Black's domain name registrar caused the registrar to disable and/or suspend the IMI.com domain name thereby limiting Mr. Black's lawful use of the domain name.

51.    The above acts by Defendant constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(iv).

52.    The foregoing actions of Defendant have been knowing, deliberate, and willful.

53.    Mr. Black is entitled to a judgment that Defendant's actions violate the Anticybersquatting Consumer Protection Act.

54.    Defendant's conduct has harmed and will continue to harm Mr. Black, thereby entitling Mr. Black to recover actual and/or statutory damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Black respectfully requests that the Court:

1.     Enter judgment on his behalf against Defendant on all counts;

2.     Enter an order finding an absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Mr. Black;

3.     Enter an order finding that Defendant made knowing and material misrepresentations in the UDRP Proceeding, to the effect that Mr. Black lacked legitimate interest in the domain name, and that his registration and use of the domain name has been in bad faith;

4.     Enter an order finding the Defendant engaged in reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act;

5.     Enter an order requiring Defendant to pay Mr. Black statutory damages of $100,000 as authorized by the Anticybersquatting Consumer Protection Act;

6.     Enter an order requiring Defendant to pay Mr. Black's reasonable attorneys' fees and costs in this action, because Defendant's misrepresentations in the UDRP Proceeding were willful, thus making this case "extraordinary" under the Lanham Act;

7.     Enter an order enjoining Defendant from any and all further efforts to force Mr. Black to transfer the IMI.com domain name to Defendant;

8.     Awarding such other and further relief as the Court deems just and proper.

Dated: March 21, 2018                    By: __/s/ Jeff Black_____

**Jeffery Dean Black**

11