1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFERY DEAN BLACK,<br><br>Plaintiff,<br><br>v.<br><br>IRVING MATERIALS, INC.,<br><br>Defendant. | Case No. 17-CV-06734-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART IRVING MATERIALS, INC.'S MOTION FOR SUMMARY JUDGMENT; AND DENYING JEFFERY DEAN BLACK'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 66, 70 |

Plaintiff Jeffery Dean Black ("Black") asserts against Defendant and Counterclaimant Irving Materials, Inc. ("Irving") a reverse domain name hijacking claim, and a declaratory relief claim that Black's use of the imi.com domain name is not unlawful and to prevent the transfer of that domain name from Black to Irving. Irving brings counterclaims for cybersquatting and for declaratory relief seeking to transfer the imi.com domain name from Black to Irving. Both parties moved for summary judgment on all claims and counterclaims. Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Irving's motion for summary judgment and DENIES Black's motion for summary judgment.

1

# I. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n. 5 (9th Cir. 1985)); *see also, e.g.*, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1029, 1031 (9th Cir. 2010); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

## II.     DISCUSSION

This case concerns Black, an individual who registered the imi.com domain name in March 1994, and Irving, an Indiana concrete and construction materials supplier that claims the IMI mark, which is the acronym of "Irving Materials Inc." In October 2017, Irving initiated an ex parte Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding against Black for the imi.com domain name. On November 21, 2017, Black initiated the instant suit against Irving.

On March 22, 2018, Black filed his first amended complaint ("FAC") pro se and asserted two claims: (1) declaratory relief regarding no bad faith intent/cyberpiracy (15 U.S.C. § 1114(2)(D)(v), 1125(d)(1)(B)(ii)); and (2) reverse domain name hijacking ("RDNH") (15 U.S.C. § 1114(2)(D)(iv)). ECF No. 11 ("FAC").

On May 21, 2018, Defendant and Counterclaimant Irving answered Black's amended complaint and asserted two counterclaims: (1) cybersquatting (15 U.S.C. § 1125(d)); and (2) declaratory relief (28 U.S.C. § 2201). ECF No. 25 ("Counterclaims").

Black and Irving both move for summary judgment on all claims and counterclaims. *See* ECF No. 66 ("Irving Mot."); ECF No. 70 ("Black Mot."). The Court first addresses Black's RDNH claim. The Court second addresses the remaining three claims together because the Court finds that genuine disputes of material fact preclude summary judgment on these three claims.[1]

---

[1] Irving filed two unopposed requests for judicial notice ("RJNs"). ECF Nos. 69 & 75. The Court GRANTS Irving's RJNs because they request notice of matters either "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Irving also filed evidentiary objections to Black's evidence. ECF No. 72 ("Irving Opp'n") at 8–10. However, "to survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) Thus, the Court OVERRULES WITHOUT PREJUDICE Irving's evidentiary objections. Irving's opposition also challenges the expert report of Dr. James Wright. Irving Opp'n at 10–11. The Court does not rely on Dr. Wright's report in the instant Order. Therefore, the Court DENIES AS MOOT Irving's challenge to Dr. Wright's expert report. Finally, Black filed a request for judicial notice ("Black's RJN"), and Irving objected. ECF Nos. 80 & 81. In the instant Order, the Court does not rely on the evidence of which Black seeks judicial notice. Thus, the Court DENIES AS MOOT Black's RJN and Irving's objection.

Case No. 17-CV-06734-LHK
ORDER GRANTING IN PART AND DENYING IN PART IRVING MATERIALS, INC.'S MOTION FOR SUMMARY JUDGMENT; AND DENYING JEFFERY DEAN BLACK'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

### A. Black's Reverse Domain Name Hijacking Claim

Black argues that he mistakenly pled his RDNH claim as a violation of 15 U.S.C. § 1114(2)(D)(*iv*). Instead, Black intended to assert a RDNH claim in violation of 15 U.S.C. § 1114(2)(D)(*v*). ECF No. 77 ("Black Reply") at 10–11. Irving argues that Black's FAC alleged a RDNH claim under subsection (iv), not subsection (v). Irving Opp'n at 21; ECF No. 78 ("Irving Reply") at 14–15. Irving also argues that Black's RDNH subsection (iv) claim fails as a matter of law. Irving Mot. at 22–23. The Court address each of Irving's arguments in turn.

#### 1. Black Asserts a Violation of 15 U.S.C. § 1114(2)(D)(iv)

In his summary judgment briefing, Black argues that his citation to subsection (iv) in the FAC is a "typographical error made by Mr. Black (*pro se*) when he filed his FAC, wherein he cited 15 U.S.C. § 1114(2)(D)(iv) rather than subsection (v)." Black Reply at 10–11 (emphasis in original). Black then focuses on what is required to sustain a RDNH claim under subsection (v). Black Mot. at 24–25; ECF No. 76 ("Black Opp'n") at 19–22.

The Court disagrees that Black made a typographical error. The title of the FAC's RDNH claim and its factual allegations specifically reference 15 U.S.C. § 1114(2)(D)(iv). *See, e.g.*, FAC at 10 ¶ 51 ("The above acts by Defendant constitute reverse domain name hijacking in violation of the [ACPA], 15 U.S.C. § 1114(2)(D)(iv)."). Moreover, the FAC's substantive allegations track the language of subsection (iv). For instance, subsection (iv) states that "[i]f a registrar . . . takes an action . . . based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages . . . ." 15 U.S.C. § 1114(2)(D)(iv).[2]

---

[2] Subsection (iv) provides in full:
> If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

Case No. 17-CV-06734-LHK
ORDER GRANTING IN PART AND DENYING IN PART IRVING MATERIALS, INC.'S MOTION FOR SUMMARY JUDGMENT; AND DENYING JEFFERY DEAN BLACK'S MOTION FOR SUMMARY JUDGMENT

Mirroring that portion of the statute, Black's FAC alleges that "Defendant's UDRP filing and the allegations of cybersquatting set forth therein represent a knowing and material misrepresentation that the imi.com domain name is identical to, confusingly similar to, or dilutive of [Irving's] mark." FAC ¶ 49. Therefore, the Court is unpersuaded that Black's decision to bring his RDNH claim under subsection (iv) was a mere "typographical error."

Moreover, Black's prior status as a pro se litigant does not warrant construing his RDNH claim as stating a violation of subsection (v) instead of subsection (iv). Black's FAC is well written and demonstrates his competence, and Black's pro se status was only temporary. Black filed his FAC on March 22, 2018 and subsequently obtained counsel, who filed their appearances in his case on June 20, 2018 and June 27, 2018. ECF Nos. 31 & 36. After Black obtained counsel, he could have, with their help, stated a claim for a subsection (v) violation, as he purports to have intended. Indeed, at the June 20, 2018 case management conference, with Black's counsel present, the Court set August 15, 2018 as the deadline to amend the pleadings. ECF No. 34. Black's counsel never filed a motion or stipulation to further amend Black's complaint to correct his RDNH claim. Accordingly, the Court finds that Black's RDNH claim asserts a violation of 15 U.S.C. § 1114(2)(D)(iv).

### 2. Black's Reverse Domain Name Hijacking Claim Fails as a Matter of Law

Black's summary judgment briefing continuously asserts that Black intended to bring a RDNH claim for violation of subsection (v) and makes no argument in support of his subsection (iv) claim. Black Mot. at 24–25 (discussing only subsection (v)); Black Opp'n at 19–22 (asserting subsection (iv) is "inapplicable" and that "[t]here is no justification to add the 'misrepresentation' element under subsection (iv) into the elements of subsection (v)—they are different claims aimed at different behavior."); Black Reply at 10–11 (asserting subsection (iv) is not "applicable" and that Black made a "typographical error."). Thus, Black repeatedly asserts that subsection (iv) is inapplicable and abandons his RDNH claim for violation of subsection (iv). Although "summary judgment is not properly granted simply because there is no opposition," *Atilano v. Cty. of Butte,*

2008 WL 4078809, at *6 (E.D. Cal. Aug. 29, 2008) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)), a court "has no obligation to search the entire case file for evidence that establishes a genuine issue of fact when the nonmovant presents inadequate opposition to a motion for summary judgment," *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001).

Because Black abandons his RDNH subsection (iv) claim, the Court GRANTS summary judgment to Irving as to Black's RDNH in violation of 15 U.S.C. § 1114(2)(D)(iv) claim and DENIES Black's motion for summary judgment as to this claim.

**B. Irving's Cybersquatting and Declaratory Relief Counterclaims and Black's Declaratory Relief Claim**

Summary judgment as to the three remaining claims rises and falls together on the issues of whether Irving's trademark ("mark") is distinctive and whether Black acted with bad faith intent. Therefore, the Court first identifies the three remaining claims then discusses why genuine disputes of material fact as to distinctiveness and bad faith intent preclude summary judgment on all three claims.

Irving's first counterclaim is for cybersquatting in violation of 15 U.S.C. § 1125(d). Counterclaims ¶¶ 22–28. The Anti-Cybersquatting Consumer Protection Act ("ACPA") establishes civil liability where the plaintiff proves that (1) the defendant "registered, trafficked in, or used a domain name"; (2) the domain name "in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark" owned by the plaintiff; and (3) the defendant acted "with bad faith intent to profit from that mark." *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218–19, n.10 (citing 15 U.S.C. § 1125(d)).

Irving's second counterclaim seeks declaratory relief that Black has no right to use imi.com and that Black's "registration of the domain was done in bad faith for the purpose of obtaining a substantial profit." Counterclaims ¶¶ 29–34. Irving therefore requests the Court to transfer imi.com from Black to Irving. *Id.* at 19–20; 15 U.S.C. § 1125(d)(1)(C) ("[A] court may

order the forfeiture or cancellation of the domain name or the transfer of the domain name.").

Black's declaratory relief claim seeks the inverse: declaratory relief finding "no bad faith intent in the registration" of imi.com pursuant to 15 U.S.C. §§ 1114(2)(D)(v) and 1125(d)(1)(B)(ii). FAC ¶¶ 40–45. Black requests the Court enter an order enjoining Irving from any efforts to force Black to transfer the imi.com domain name. *Id.* at 11.

Whether Black violated the ACPA is dispositive of all three claims. The Court next addresses whether Irving's mark is distinctive, which is the second element of an ACPA violation, then whether Black acted with bad faith intent, which is the third element of an ACPA violation.

### 1. Whether Irving's Mark is Distinctive Presents Genuine Disputes of Material Fact

Element 2 of the ACPA requires that Irving's mark be distinctive. If Irving's mark is not distinctive, that issue disposes of all three remaining claims. To find distinctiveness, the mark must first be placed on a spectrum of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The latter three categories of marks are deemed inherently distinctive and are entitled to protection because they serve to identify a particular source of a product. *Id.*

On the other hand, "[g]eneric marks are not capable of receiving protection because they identify the product, rather than the product's source." *KP Permanent Make-Up, Inc v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).

Descriptive marks simply "define a particular characteristic of the product in a way that does not require any exercise of the imagination." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005). A descriptive mark receives trademark protection only when it establishes "secondary meaning" in the marketplace. *Id.* Secondary meaning occurs when "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (citation and bracket omitted).

"The general rule regarding distinctiveness is clear: An identifying mark is distinctive and

7

capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc.*, 505 U.S. at 769. "Placement on the spectrum of distinctiveness does not end the enquiry as to the strength of a mark: it is only the first step. The second step is to determine the strength of this mark in the marketplace. That is, to ascertain its degree of recognition in the minds of the relevant customer class." *Lahoti v. Vericheck, Inc.*, 2007 WL 2570247, at *4 (W.D. Wash. Aug. 30, 2007), *aff'd*, 586 F.3d 1190 (9th Cir. 2009) (quoting 2 McCarthy on Trademarks and Unfair Competition § 11:2 (5th ed.)).

The Court next discusses inherent distinctiveness then secondary meaning and strength. For the reasons below, the Court concludes that neither party has met their burden to show that Irving does or does not hold a distinctive mark as a matter of law, and thus the issue must be resolved at trial.

### a. Inherent Distinctiveness

First, Irving argues that its IMI mark is "inherently distinctive" and that Irving need not prove secondary meaning. Irving Mot. at 13–14. Irving argues that its federal registration constitutes presumptive evidence of inherent distinctiveness. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009) ("[F]ederal trademark registration of a particular mark supports the distinctiveness of that mark . . . . Registration alone may be sufficient in an appropriate case to satisfy a determination of distinctiveness."). Irving also argues that its IMI mark is not generic or descriptive because Irving's federal registration is for "concrete and construction aggregates including sand, gravel, stone and concrete," and the IMI mark does not describe those products. Irving Mot. at 13; ECF No. 74 ("McPherson Decl.") ¶¶ 2–3; Ex., E ("Sept. 1995 Registration").

In opposition, Black argues that Irving's trademark registration did not occur until September 1995, which was *after* Black's March 1994 registration of imi.com, and therefore Irving's later registration does not provide presumptive evidence that the IMI mark was distinctive *at the time* of Black's imi.com domain name registration. Black Mot. at 13–14; *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011) (emphasizing that the ACPA asks whether the mark

was distinctive "*at the time of registration*" of the domain name); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1118 (N.D. Cal. 2010) ("[O]nly evidence showing use of the mark in advertising prior to Defendant's use of the mark is probative of secondary meaning.").

Black argues further that the IMI mark is not inherently distinctive because the IMI mark is a bare acronym that consists of the personal name "Irving" and "materials" and "inc.," which Black argues are generic, and describe Irving's products. Black Opp'n at 5–6 (citing *CPP Ins. Agency, Inc. v. Gen. Motors Corp.*, 1980 WL 30349, at *4 (C.D. Cal. Dec. 4, 1980) ("Initials, especially when they are initials derived from a corporate name, are descriptive and are entitled to protection only if they have acquired a secondary meaning."), *aff'd without opinion*, 676 F.2d 709 (9th Cir. 1982)).

The Court finds that there is a genuine dispute of material fact as to whether the IMI mark is inherently distinctive.

### b. Secondary Meaning and Strength

If Irving's IMI mark is not inherently distinctive, Irving would have to prove the IMI mark acquired distinctiveness through secondary meaning. To determine secondary meaning, the Ninth Circuit looks to a number of factors, including "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) (citation omitted). "When descriptive marks are especially 'weak,' [the Ninth Circuit] require[s] a 'strong showing of strong secondary meaning.'" *Id.* The Court discusses secondary meaning and strength below.

Here, Irving cites evidence that Irving has used the IMI mark since 1965. McPherson Decl. ¶ 7. In addition, Irving's Vice President of Sales and Marketing, Jeffrey D. McPherson ("McPherson") declares that Irving has continuously used the IMI mark and advertised the IMI

mark since that date, and that Irving has displayed the IMI mark on: "correspondence, business cards, fax cover sheets, and prices lists"; "company buildings and signage, including billboards"; "company uniforms"; "company vehicles and equipment traveling on interstate highways"; "marketing and promotional materials"; and "press releases and print advertising," among other things. *Id.* Finally, McPherson declares that Irving has spent "tens of millions of dollars on advertising and marketing, and its annual budget for these activities since that date has averaged approximately $1 million per year." *Id.* ¶ 11; ECF No. 67 ("O'Brien Decl."), Ex. A ("McPherson Dep."); Ex. B ("Jason Richmond Dep.").

Black challenges the strength of Irving's evidence. For instance, Black cites evidence that although Irving identifies its first use of the mark as occurring in 1965, Irving swore in its trademark application that Irving's first date of use "in commerce" was March 1, 1991. *See* Sept. 1995 Registration. Black argues that the three-year period between March 1, 1991 and March 15, 1994 (when Black registered the domain name) would have been an insufficient amount of time to prove that Irving's IMI mark acquired distinctiveness under the Lanham Act, 15 U.S.C. § 1052(f).

Black also challenges the strength of Irving's "use" evidence because it consists of declaration and deposition testimony. Black Opp'n at 7. Black argues that Irving lacks consumer surveys, consumer testimony, and evidence to prove the effectiveness of Irving's advertising. *See, e.g.*, *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("An expert survey of purchasers can provide the most persuasive evidence of secondary meaning.").

Black also argues that the IMI mark is weak because it consists of an acronym that is used not only by Irving, but by numerous other businesses. Black Mot. at 15; ECF No 70-1 ("Marie Richmond Decl."), Ex. Y ("USPTO Registration Certificates") (collecting at least nineteen other companies that had IMI trademark registrations issued in the United States prior to 1994); Ex. Z ("Markify Search Report") (collecting list of nearly 2,500 IMI-formative domain names, over 100 IMI-formative business names, and screenshots of IMI websites). Irving counters this evidence by attaching the USPTO's Trademark Electronic Search System for sixteen of the nineteen IMI

10

ORDER GRANTING IN PART AND DENYING IN PART IRVING MATERIALS, INC.'S MOTION FOR SUMMARY JUDGMENT; AND DENYING JEFFERY DEAN BLACK'S MOTION FOR SUMMARY JUDGMENT

registrations that have since been cancelled or expired. ECF No. 73-6, Ex. H.

Black also cites evidence that Irving is limited in geographic scope because Irving is confined to Indiana and the immediately surrounding areas. Marie Richmond Decl., Ex. B ("Irving 1996 Website"); McPherson Decl. ¶ 8 (McPherson explaining that Irving began operating plants in Ohio in 1991 and in Kentucky in 1993). Moreover, the website shows that Irving's business was limited to the supply of concrete and concrete aggregate products. *See* Irving 1996 Website.

Finally, courts have recognized that "the question of distinctiveness is ordinarily for the trier-of-fact." *Lahoti*, 2007 WL 2570247 at *5.

The Court finds the parties have raised genuine disputes of material fact as to Irving's mark's secondary meaning and strength. Thus, the Court finds a genuine dispute of material fact as to the distinctiveness of Irving's mark. Distinctiveness is dispositive of all three remaining claims because if Irving's mark is not distinctive, Irving has no ACPA claim and is not entitled to transfer of imi.com domain name. *DSPT Intern., Inc.,* 624 F.3d at 1218–19, n.10 (citing 15 U.S.C. § 1125(d)). If Irving has no ACPA claim, then Black did not act unlawfully under the ACPA, and Black would be entitled to declaratory relief in his favor.

### 2. Whether Black Acted with Bad Faith Intent Presents Genuine Disputes of Material Fact

Bad faith intent is the third element of an ACPA violation and is therefore also dispositive of all three remaining claims. The ACPA lists nine non-exclusive factors to consider in determining whether a person has a bad faith intent to profit from the domain name. *Interstellar Starship Servs., Ltd.*, 304 F.3d at 946. These factors are: (1) whether Black holds any trademark or other intellectual property rights in imi.com; (2) the extent to which Black is commonly known by IMI and imi.com; (3) whether Black used imi.com in connection with the bona fide offering of any goods or services; (4) whether Black used imi.com in a manner constituting a bona fide noncommercial or fair use; (5) Black's intent to divert consumers from Irving's online location to imi.com either for commercial gain or by creating a likelihood of confusion as to the source,

sponsorship, affiliation, or endorsement of the site; (6) Black's attempts to transfer, sell, or otherwise assign imi.com to Irving or any third party for financial gain without having used, or having an intent to use, imi.com in the bona fide offering of any goods or services or Black's prior conduct indicating a pattern of such conduct; (7) the accuracy of Black's contact information listed in Black's domain registration; (8) Black's acquisition of other domains that Black knows are identical or confusingly similar to marks of others; and (9) the extent to which the IMI mark is distinctive. 15 U.S.C. § 1125(d)(1)(B)(i).

Although these factors are strong indicators of bad faith, "the most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress." *Interstellar Starship Servs., Ltd.*, 304 F.3d at 946–47 (internal quotation marks and citations omitted).

Both Irving and Black agree that these factors and the unique circumstances of the case provide the appropriate framework to assess bad faith intent. Both parties cite case law that supports a finding that each factor weighs in their favor. The Court now addresses each factor and the unique circumstances of the case.

### a. Factors 1–4

The parties present conflicting evidence on the first four factors, which are (1) whether Black holds any trademark or other intellectual property rights in imi.com; (2) the extent to which Black is commonly known by IMI and imi.com; (3) whether Black used imi.com in connection with the bona fide offering of any goods or services; and (4) whether Black used imi.com in a manner constituting a bona fide noncommercial or fair use. 15 U.S.C. § 1125(d)(1)(B)(i).

Black argues factor 1 weighs in his favor because Black has rights in the imi.com domain name, "which he registered 25 years ago," with domain name registrar Network Solutions on March 15, 1994, "and has owned ever since." Black Mot. at 19; ECF No. 70-2 ("Black Decl.") ¶ 1, Ex. C ("WHOIS Record"). Black argues factors 2–4 weigh in his favor because he used the imi.com domain name in conjunction with his two businesses that operated "under the IMI

12

moniker—Internet Marketing Inc. from 1994 to 1998, and International Monetary Investments LLC from 2016 to present," and because Black spent large amounts of time and money on both businesses. Black Mot. at 19–21; *Interstellar Starship Servs., Ltd.*, 304 F.3d at 947 (finding a bona fide use when the domain owner "continuously used the domain name and invested money on hardware and software as well as significant amounts of time on the development of a viable business plan"). Black also argues that International Monetary Investments LLC is currently using the imi.com domain for a "coming soon" website and for business email and that a new website "will be launched once title to the Domain is no longer clouded by this lawsuit." Black Decl. ¶¶ 16–17. In support of his arguments, Black attaches evidence of business emails, contracts, bank statements, presentation notes, and more. Black Decl. ¶¶ 2–10, 27; *id.*, Exs. E–S, Z1. Black also argues his use of the imi.com domain name in connection with a "free directory" of "IMI-formative businesses" was a bona fide non-commercial use. Black Decl. ¶¶ 13–14; ECF No. 67-4, Ex. D ("Black Dep."), Exs. 9–12, 14–20 (screenshots of imi.com from 1996–2018).

Irving argues that factor 1 weighs in its favor and cites evidence that Black admitted at his deposition that he does not own any property rights to an IMI mark. *See* Irving Mot. at 17–18 (citing Black Dep. at 220:24–222:4). In addition, Black responded to the question "[d]id you ultimately obtain a trademark registration in imi.com," with "I just remember seeing that it was in process. It will be done shortly. I don't remember honestly what happened." Black Dep. at 220:24–222:21. As for factors 2–4, Irving exhaustively disputes the extent to which Black's two businesses are commonly known by the domain name and the extent to which Black used the imi.com domain name in a bona fide manner. Irving Mot. at 15–18. Irving argues that Internet Marketing Inc. did not exist at the time Black registered imi.com in March of 1994. *Id.* at 15–16. Irving also cites evidence that the imi.com website has never offered any goods or services for Internet Marking Inc. O'Brien Decl. ¶¶ 4–5; Black Dep., Exs. 9–12, 14–20 (screenshots of imi.com from 1996–2018). Irving cites evidence that the only offer to sell on imi.com was a solicitation to sell "popular domain names (www.IMI.com) and (www.IMI.info)," for not "less

13

than two million dollars." *See* Black Dep., Ex. 17. Irving also argues that Internet Marketing Inc. has been "void" since March 1, 1997, and that International Monetary Investments had a tax delinquency notice since November 2, 2017 and was administratively dissolved on January 9, 2019, and therefore the two businesses do not support a finding of legitimate business use. Irving Mot. at 16, 18 (citing Black Dep., Ex. 7); Irving Opp'n at 25 (citing Black Decl. ¶ 15, Ex. R). Finally, Irving argues that Black's citation to International Monetary Investments LLC to show "use" is "manufactured" and a "sham." Irving Opp'n at 19.

In light of these factual disputes, the Court finds that factors 1–4 raise numerous genuine disputes of material fact.

### b. Factor 5

Factor 5 is Black's intent to divert consumers from Irving's online location to imi.com either for commercial gain or by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. 15 U.S.C. § 1125(d)(1)(B)(i).

Black argues factor 5 weighs in his favor and that it is impossible that Black intended to divert traffic from Irving's website because Irving's website did not exist until 1996, at least two years after Black registered the imi.com domain name. Black Decl. ¶¶ 1–2; Irving 1996 Website. Even further, Black cites evidence that he had no knowledge of Irving whatsoever because "[h]e was an early internet pioneer in Maryland and California, with no interest in the concrete supply business in and around Indiana." Black Opp'n at 11; Black Decl. ¶¶ 2–12, Exs. E–P.

By contrast, Irving argues factor 5 is satisfied simply because Black's imi.com domain name and Irving's IMI mark are identical. Irving Mot. at 17–18. Irving also cites evidence that Black admitted at his deposition that people were diverted to imi.com from other companies because of actual confusion. Black testified that he "was getting a lot of people looking up the domain name calling [him] about other people's products." Black Dep. 179:6–21. Irving also argues that Black's IMI-formative business directory on imi.com demonstrates that Black intended to capitalize on any confusion and spark a "bidding war" for the domain. Irving Mot. at 17 (citing

14

Black Dep. at 181:7–188:1).

Black argues in opposition that Irving has produced no evidence that Black ever diverted customers or traffic from Irving's website. Black Opp'n at 11. Moreover, Black argues the fact that Irving took no action regarding the domain name from 1998, when Irving first contacted Black about purchasing imi.com, to 2017, when Irving filed its UDRP complaint against Black "indicates that nobody was confused in any way relevant or harmful to Irving, else one would reasonably think that Irving would have taken some action during that time." *Id.* (citing McPherson Decl. ¶¶ 12–13; McPherson Dep. 128:7–19).

The Court concludes that factor 5 raises numerous genuine disputes of material fact.

### c. Factors 6 and 8

Factors 6 and 8 are (6) Black's attempts to transfer, sell, or otherwise assign imi.com to Irving or any third party for financial gain without having used, or having an intent to use, imi.com in the bona fide offering of any goods or services or Black's prior conduct indicating a pattern of such conduct; and (8) Black's acquisition of other domains that Black knows are identical or confusingly similar to marks of others. 15 U.S.C. § 1125(d)(1)(B)(i).

Irving argues factors 6 and 8 weigh in its favor because Black admitted in his deposition that he attempted to sell the imi.com domain name to third parties at least four times—including directly to Irving in 1998. Irving Mot. at 19 (citing Black Dep. at 161:24–166:6, 181:7–185:10; Ex. 13; ECF No. 67-3 ("Howard Dep.")). Black also admitted he was willing to sell the domain name to make what Irving calls an exorbitant profit—$135,000 in 1998, at least $2 million from 2002 to 2018, and in 2002, Black sparked a "bidding war" in which he demanded $4 million. *Id.* (citing Black Decl. at 161:24–166:6, 181:7–185:10). As for factor 8, Irving cites that Black publicly offered to sell not just imi.com, but also imi.info. *Id.* (citing Black Dep., Exs. 15–20).

Black argues that factor 6 weighs in his favor because he made bona fide use of the domain name in connection with his businesses. *See* Black Mot. at 22; *see also* Factors 3–4. Therefore, Black argues that "since he has made *bona fide* use of the Domain, he owns that property and it is

immaterial as to this factor whether or not he ever offered to sell it." *Id.* Next, Black disputes

Irving's interpretation of the offer to sell evidence. Specifically, Black asserts that Black never

approached Irving and that it was Irving that approached Black to purchase the domain name in

1998 for $500, but that the parties could not agree on a price. Black Decl. ¶¶ 18–21; *see, e.g.*,

*Wagner v. lindawagner.com*, 202 F. Supp. 3d 574, 583 (E.D. Va. 2016) (finding this factor

weighed against bad faith when the parties could not agree on price: "It is undisputed that eWeb

never approached plaintiff to sell her the domain name. Instead, it was Wagner who approached

eWeb with an offer to purchase the domain name.").

As for the last clause of factor 6, Black argues there is no evidence to support a finding that

Black has a pattern of cybersquatting because he has only sold three domains, in two transactions

"some 20 years ago." Black Mot. at 22–23. "One of those transactions was to sell hotels.com and

resorts.com for millions of dollars, as part of a business [Black] helped to build." Black Decl. ¶ 28.

The other was to sell globalvillage.com for several thousand dollars in 2001, which was a domain

that Black had registered and used. *Id.*

The Court concludes that factors 6 and 8 raise numerous genuine disputes of material fact.

### d. Factor 7

Factor 7 considers the accuracy of Black's contact information listed in Black's domain

registration. 15 U.S.C. § 1125(d)(1)(B)(i). Black argues that this factor weighs entirely in his favor

because he has consistently "maintained accurate contact information on the WHOIS record" for

imi.com. Black Mot. at 23. Irving concedes this and states: "Mr. Black confirmed at deposition

that the address he provided with his registration of imi.com was accurate." Irving Mot. at 15 n.74.

### e. Factor 9

Finally, factor 9 examines the extent to which the IMI mark is distinctive. 15 U.S.C. §

1125(d)(1)(B)(i). As discussed above, there is a genuine material factual dispute as to whether

Irving's IMI mark is distinctive. Thus, factor 9 raises genuine disputes of material fact.

### f. The Unique Circumstances of the Case.

16

United States District Court
Northern District of California

Finally, the Court finds there are genuine disputes of material fact as to the unique circumstances of the case. On the one hand, Irving presents evidence of the contents of the imi.com website, including that Black publicly displayed a $2 million price tag on imi.com. The Ninth Circuit has recognized that "willingness to sell the Domain Name only for an exorbitant profit [is] quintessential cybersquatting practice." *Lahoti*, 586 F.3d at 1203. Moreover, Irving cites evidence demonstrating that Black may have been disguising his alleged bad faith solicitations because in March 2018, after the UDRP decision was issued and after Black commenced the instant lawsuit, Black altered the contents of imi.com to remove the IMI-formative business directory and his offer to sell. Black Dep., Exs. 18, 20.

On the other hand, Black presents evidence that the unique circumstances of this case lie in the lack of distinctiveness in Irving's mark, Black's lack of knowledge of Irving's mark at the time of Black's registration, Black's lack of intent to profit off the goodwill of Irving's IMI mark, and Irving's failure to bring the ex parte UDRP proceeding and its instant counterclaims for over 20 years after Black registered imi.com. Black contends Irving is an exceptionally overreaching entity who used the UDRP to acquire Black's domain property for free despite previously offering to buy it. The Court finds there are genuine disputes of material fact as to the unique circumstances of the case.

In sum, having considered the above described arguments, the Court finds numerous genuine disputes of material fact as to whether Black acted with bad faith intent. The issue of bad faith intent is dispositive of both of Irving's counterclaims because if Black did not act with bad faith intent, Irving has no claim for cybersquatting and is not entitled to transfer of the imi.com domain name. *DSPT Intern., Inc.*, 624 F.3d at 1218–19, n.10 (citing 15 U.S.C. § 1125(d)). The issue of bad faith intent is also dispositive of Black's declaratory relief claim because his claim specifically seeks declaratory relief of "no bad faith intent in the registration of the imi.com domain name."

## III. CONCLUSION

Case No. 17-CV-06734-LHK
ORDER GRANTING IN PART AND DENYING IN PART IRVING MATERIALS, INC.'S MOTION FOR SUMMARY JUDGMENT; AND DENYING JEFFERY DEAN BLACK'S MOTION FOR SUMMARY JUDGMENT

For the foregoing reasons, the Court GRANTS Irving's motion for summary judgment and DENIES Black's motion for summary judgment as to Black's RDNH claim in violation of 15 U.S.C. § 1114(2)(D)(iv). The Court DENIES both Irving and Black's motion for summary judgment as to Irving's counterclaims for cybersquatting and for declaratory relief, and Black's claim for declaratory relief.

**IT IS SO ORDERED.**


Dated: May 6, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 17-CV-06734-LHK
ORDER GRANTING IN PART AND DENYING IN PART IRVING MATERIALS, INC.'S MOTION FOR SUMMARY JUDGMENT; AND DENYING JEFFERY DEAN BLACK'S MOTION FOR SUMMARY JUDGMENT