REED SMITH LLP
Kathyleen A. O'Brien (SBN 94218)
kaobrien@reedsmith.com
Carla M. Wirtschafter (SBN 292142)
cwirtschafter@reedsmith.com
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067-6078
Telephone:     (310) 734-5418
Facsimile:     (310) 734-5299

Attorneys for Defendant and Counterclaimant
IRVING MATERIALS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFERY DEAN BLACK, IN PRO PER,<br><br>Plaintiff,<br><br>v.<br><br>IRVING MATERIALS, INC.,<br><br>Defendant. | Case No.: 5:17-cv-06734-LHK<br><br>**DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES (DKT. 201)**<br><br>Complaint Filed: November 21, 2017<br>FAC Filed: March 22, 2018<br>Counterclaims Filed: May 21, 2018<br>Hearing Date: December 19, 2019<br>Time:          1:30 p.m. |
| IRVING MATERIALS, INC.,<br><br>Counter-claimant,<br><br>v.<br><br>JEFFERY DEAN BLACK, an individual, and DOES 1-10, inclusive,<br><br>Counter-Defendants. | Date: December 19, 2019<br>Time: 1:30 p.m.<br>Locations: Courtroom 8<br><br>JUDGE: Hon. Lucy H. Koh |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ....................... 2

  A.  IMI Brought A Successful UDRP Proceeding In October 2017 ................................ 2

  B.  Plaintiff Filed This Lawsuit To Stop The Transfer of the Domain Name To
      IMI Pursuant To The UDRP Order ........................................................................ 3

  C.  At Trial, IMI Introduced Evidence That Supported Each Element Of Its
      ACPA Counterclaim ............................................................................................ 4

III.  THIS CASE DOES NOT QUALIFY AS EXCEPTIONAL ............................................. 6

  A.  IMI's ACPA Counterclaim Was Supported By The Law And Evidence .................... 7

    1.  Controlling Ninth Circuit Authority Supports IMI's ACPA
        Counterclaim ........................................................................................... 7

    2.  IMI's ACPA Counterclaim Was Reasonably Supported By Both
        The Documents And The Testimony It Introduced at Trial ......................... 10

    3.  Plaintiff Has Failed To Identify Any Legal Authority to Support
        His Assertion That IMI's ACPA Counterclaim Was "Objectively
        Unreasonable" ......................................................................................... 14

  B.  IMI Brought Its ACPA Counterclaim In Good Faith .............................................. 17

  C.  Plaintiff Relies On His *Dismissed* Reverse Domain Name Hijacking Claim
      To Argue That IMI Acted In Bad Faith And That This Case Is Exceptional ............ 19

IV.  PLAINTIFF'S REQUESTED FEES ARE NOT REASONABLE ...................................... 20

V.  CONCLUSION .......................................................................................................... 22

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKT. 201]

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AirFX.com v. AirFX, LLC,*
   2013 WL 857976 (D. Ariz. Mar. 7, 2013) ........................................................................15

*Amusement Art, LLC v. Life is Beautiful, LLC,*
   No. 214CV08290DDPJPR, 2017 WL 2259672 (C.D. Cal. May 23, 2017), *aff'd in*
   *part, vacated in part, remanded,* 768 F. App'x 683 (9th Cir. 2019) ...............................15

*Apple Inc. v. Samsung Elecs. Co.,*
   No. 11-CV-01846-LHK, 2014 WL 4145499 (N.D. Cal. Aug. 20, 2014) .................................7, 20

*Applied Information Sciences Corp. v. eBay, Inc.,*
   511 F.3d 966 (9th Cir. 2007) .....................................................................................13, 18

*Caiz v. Roberts,*
   No. CV1509044RSWLAGRX, 2017 WL 830386 (C.D. Cal. Mar. 2, 2017) .........................7, 14

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.,*
   No. 2:15-cv-02812-ODW, 2016 WL 5842187 (C.D. Cal. Oct. 5, 2016) ........................................9

*DSPT Intern., Inc. v. Nahum,*
   624 F.3d 1213 (9th Cir. 2010) ................................................................................. *passim*

*E. & J. Gallo Winery v. Spider Webs Ltd.,*
   286 F.3d 270 (5th Cir. 2002) .............................................................................................12

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,*
   198 F.3d 1143 (9th Cir. 1999) ..........................................................................................12

*Gracie v. Gracie,* 217 F.3d 1060 (9th Cir. 2000) .....................................................20, 21

*Grasshopper House, LLC v. Clean & Sober Media LLC,*
   No. 218CV00923SVWRAO, 2019 WL 2762936 (C.D. Cal. July 1, 2019) ..........................13, 18

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ............................................................................................................21

*Intel Corp. v. Terabyte Int'l, Inc.,*
   6 F.3d 614 (9th Cir. 1993) ................................................................................................20

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
   408 F.3d 596 (9th Cir. 2005) .............................................................................................11

*Lahoti v. VeriCheck, Inc.,*
   586 F.3d 1190 (9th Cir. 2009) ................................................................................8, 9, 12, 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKT. 201]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co.*,
  LLC, No. 4:16-CV-00427-DCN, 2018 WL 6186798 (D. Idaho Nov. 27, 2018) .........................16

*Nutrivita Labs., Inc. v. VBS Distribution Inc.*,
  160 F.Supp.3d 1184 (C.D. Cal. 2016) .................................................................................7, 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) .............................................................................................................6

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
  793 F.2d 1132 (9th Cir. 1986) ................................................................................................19

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
  179 F.3d 704 (9th Cir. 1999) ..................................................................................................19

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
  No. 3:15-CV-04618-WHO, 2017 WL 6059271 (N.D. Cal. Dec. 7, 2017).............................14, 15

*Sealy, Inc. v. Easy Living, Inc.*,
  743 F.2d 1378 (9th Cir. 1984) ................................................................................................20

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ..................................................................................................7

*Shields v. Zuccarini*,
  254 F.3d 476 (3d Cir. 2001)....................................................................................................12

*Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*,
  No. 12-CV-2472-AJB-KSC, 2019 WL 1429588 (S.D. Cal. Mar. 29, 2019)...........................9, 14

*Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*,
  202 F.3d 489 (2d Cir. 2000)....................................................................................................13

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016) (en banc) ..................................................................................6

*Symantec Corp. v. Johns Creek Software, Inc.*,
  No. C 11-03146 WHA, 2012 WL 10518 (N.D. Cal. Jan. 3, 2012).............................................9

*Talent Mobile Dev., Inc. v. Headios Grp.*,
  382 F. Supp. 3d 953 (C.D. Cal. 2019) ....................................................................................18

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
  No. 13CV651 JLS (MDD), 2017 WL 1235766 (S.D. Cal. Apr. 4, 2017),
  reconsideration denied, No. 13-CV-651 JLS (MDD), 2017 WL 4792426 (S.D.
  Cal. Oct. 24, 2017)............................................................................................................15, 20

*Trowbridge Sidoti LLP v. Taylor*,
  No. 8:16-CV-00771-ODW-SK, 2018 WL 2670656 (C.D. Cal. June 4, 2018).............................7

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ..................................................................................................11

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) ...............................................................................12

**Statutes**

15 U.S.C. § 1125(d) ..............................................................................................4, 15

15 U.S.C. § 1125(d)(1)(A) ..........................................................................................9

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKTS 201]

## I.   **INTRODUCTION**

Plaintiff and Counter-defendant Jeffery Dean Black ("Plaintiff") seeks to recover attorney's fees as the "prevailing party" on Defendant and Counterclaimant Irving Material Inc.'s ("IMI") ACPA counterclaim pursuant to Section 1117(a) of the Lanham Act.  However, Section 1117(a) authorizes a court to award attorney's fees *only* in "exceptional" cases.  Plaintiff is not entitled to attorney's fees because this case is not exceptional.

A case is exceptional only if it is groundless, unreasonable, vexatious, or pursued in bad faith. In determining whether a case meets this stringent standard, the Supreme Court and the Ninth Circuit have instructed district courts to consider the entirety of a lawsuit, including the results of dispositive motions, and the legal and evidentiary support the non-prevailing party offered to supports its claims. Where, as here, IMI had a legitimate reason for bringing its ACPA counterclaim, its prosecution of that claim was firmly grounded in Ninth Circuit law, it introduced substantial evidence to support each element of that claim, and it raised debatable issues and won dispositive motions during the litigation (including summary judgment on Plaintiff's reverse domain name hijacking claim), Plaintiff's request for attorney's fees must be denied.

Apart from not being exceptional, Plaintiff's request for fees for all 1143 of the hours Rodenbaugh Law states it worked on this case is unreasonable.  Not only has Plaintiff failed to meet his burden to show that this time was reasonable and necessary (he fails to include a single bill or time entry to support his Motion), but he apparently seeks to recover fees for the time spent pursuing his reverse domain name hijacking and damages claim (including after this Court repeatedly warned him not to do so because that claim had been dismissed), his acquiescence defense on which judgment for IMI was granted, and the motions he brought during trial (including an untimely motion *in limine*), which were denied by this Court.  If the Court finds that Plaintiff is entitled to attorney's fees, any such award should be substantially reduced to eliminate fees related to those issues on which he did not prevail.

For all of the reasons set forth below, IMI respectfully requests that Plaintiff's Motion be denied in its entirety.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**II.      STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY[1]**

**A.      IMI Brought A Successful UDRP Proceeding In October 2017**

IMI has been a leading supplier of concrete and construction aggregates to commercial customers since 1946, and it has continuously used its IMI trademark as the source identifier for these products since at least 1965. During trial, IMI introduced documents and testimony through three percipient IMI witnesses (Jeffrey McPherson, Jerry Howard and Jason Richmond) (*see* 6/11/19 Rptr. Trans., pp. 507:22-534:3; 6/14/19 Rptr. Trans., pp. 578:4-666:8.)[2] to show that IMI prominently and continuously used its IMI trademark for over 50 years, and was twice granted a federal trademark registration which identified the mark's date of first use as at least as early as January 1, 1965, and its date of first use in interstate commerce as at least as early as March 1, 1991. (*See* Dkt. 199, pp. 6:8-6:27, 7:1-7:7, JX-1, Def. and CC Exhibit 001, Def. and CC Exhibit 009, Def. and CC Exhibit 011, Def. and CC Exhibit 029, Def. and CC Exhibit 103; 6/14/19 Rptr. Trans., pp. 587:14-592:7, 634:17-650:8.) The same documents and testimony show that the PTO twice registered IMI's trademark directly on the Principal Register without requiring IMI to submit any proof of secondary meaning. (*Id.*)

IMI's witnesses testified under oath that, following a survey of IMI's customers and research about its marketing and branding strategies, which confirmed that its customers recognized the IMI brand and associated the IMI trademark with IMI's aggregate and concrete goods (6/14/19 Rptr. Trans., pp. 614:14-614:23, 652:14-655:7), IMI developed a new strategy to ensure that it used its IMI brand in a consistent manner across marketing channels and that its customers could easily find IMI online. They also testified that in 2017, this new strategy led IMI to visit Plaintiff's website at *www.imi.com* to determine whether it was being actively used to offer to sell goods or services. (*Id.*, pp. 614:14-615:14, 655:8-655:15). (*See also* 6/11/19 Rptr. Trans., pp. 395:3-426:20, 497:20-505:12, 6/14/19 Rptr. Trans., pp. 578:12-663:20, Dkt. 199, pp. 10:24-12:1.) IMI introduced screenshots from Plaintiff's website over time and related testimony (including Plaintiff's admissions), to show that

---

[1] Because the Court presided over a three-day trial and is familiar with the facts of this case, for the court's convenience, only the facts and procedural history relevant to this Motion are set forth in this section.

[2] Plaintiff also called Mr. McPherson and Mr. Howard to testify during his case in chief. (6/11/19 Rptr. Trans., pp. 395:1-427:13, 497:17-505:12.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   since at least December 2002, a period of over 15 years, Plaintiff had not used that website to make

2   any bona fide offering of goods or services and that, instead, he had used that website to continuously

3   display a Domain for Sale page that prominently advertised his offer to sell the *imi.com* domain name

4   for not less than two million dollars.  (*Id.*; *see also* Exhibits JX-1, JX-2, JX-3, JX-4, JX-5, JX-7, JX-

5   8, JX-9, Def. and CC Exhibit 052, Def. and CC Exhibit 053, Dkt. 199, pp. 10:24-12:1, :15:9-15:17.)

6   Based on the content the IMI witnesses saw on Plaintiff's *www.imi.com* website in 2017,

7   including the absence of any offer to sell goods or services and the Domain for Sale page, IMI brought

8   a Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding in which it sought the

9   transfer of the *imi.com* domain name from Plaintiff to IMI.  (*See* Dkt. 83; Dkt. 129, pp. 3:13-4:24; Dkt.

10  199, pp. 12:23-13:1, 6/14/19 Rptr. Trans., pp. 614:14-615:14, 6532:14-655:15.)   IMI attached

11  contemporaneous screenshots of the *www.imi.com* website to its UDRP complaint.  (*Id.*)  Based upon

12  those screenshots, the UDRP arbitrator found that Plaintiff was squatting on the *imi.com* domain name,

13  and ordered the transfer of that domain name from Plaintiff to IMI.  (*Id.*)[3]

14  **B.   Plaintiff Filed This Lawsuit To Stop The Transfer of the Domain Name To IMI**

15  **Pursuant To The UDRP Order**

16  On November 21, 2017, Plaintiff brought this lawsuit to stop the transfer of the *imi.com* domain

17  name to IMI.  (Dkt. 199, pp. 13:17-13:24.)  Plaintiff's complaint asserted two causes of action:  (1) a

18  claim for a declaratory judgment that Plaintiff did not violate the ACPA and injunctive relief to prevent

19  the transfer of the *imi.com* domain name; and (2) a claim for reverse domain name hijacking pursuant

20  to Section 1114(2)(D)(iv) of the Lanham Act.  (Dkt. 199, pp. 15:23-16:23.)  IMI answered Plaintiff's

21  complaint and brought two counterclaims against Plaintiff:  (1) a counterclaim that Plaintiff violated

22  the ACPA; and (2) a counterclaim for declaratory relief.  (*Id.*, pp. 16:24-17:2.)

23  Plaintiff and IMI both filed motions for summary judgment on all causes of action.  The Court

24  denied Plaintiff's motion in its entirety, granted summary judgment to IMI on Plaintiff's claim for

25  _____

26  [3] IMI presented this final evidence in support of its Motion for Summary Judgment.  Prior to trial
    Plaintiff brought a motion *in limine* to preclude IMI from making any reference to the UDRP

27  proceeding at trial; the Court partially granted that motion, and prohibited IMI from submitting any
    evidence during trial about its UDRP complaint, Plaintiff's failure to respond to that complaint, or the

28  arbitrator's decision, and IMI was not allowed to state that it won the UDRP.  (Dkt. 129, pp. 3:13-
    4:24.)

Case No.: 5:17-cv-06734-LHK                        – 3 –

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKTS 201]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  reverse domain name hijacking, and found that there were genuine disputes of material fact on

2  Plaintiff's declaratory relief claim and IMI's counterclaims which prevented the Court from granting

3  summary judgment on those causes of action.  (*See* Dkt. 83, Dkt. 199, pp. 17:7-19:19.)

4  Following the Court's summary judgment order dismissing Plaintiff's reverse domain name

5  hijacking claim, Plaintiff continued to attempt to pursue that claim.  Among other things, Plaintiff filed

6  pre-trial statements and requested jury instructions related to that claim, and he continued to attempt

7  to seek damages from IMI.  (*See* Dkt. 172; Dkt. 199, pp. 17:7-19:7; 20:15-21:25; 6/10/19 Rptr. Trans.,

8  pp. 164-165; 6/14/19 Rptr. Trans., pp. 574:17–577:17.)  During the course of this lawsuit, this Court

9  issued not less than three written orders, which confirmed that Plaintiff's reverse domain name

10  hijacking claim and related request for damages had been dismissed (*see* Dkts. 83, 172, 180, 199), and

11  repeatedly admonished Plaintiff's counsel for disregarding those orders.  (*Id.*, *see also* 6/10/19 Rptr.

12  Trans., pp. 164-165; 6/14/19 Rptr. Trans., pp. 574:17–577:17.)

13  **C.     At Trial, IMI Introduced Evidence That Supported Each Element Of Its ACPA**

14  **Counterclaim**

15  This Court presided over a three-day jury trial on Plaintiff's declaratory relief claim and IMI's

16  ACPA and declaratory relief counterclaims.  During trial, IMI introduced documents and testimony

17  through its witnesses to support each element of its counterclaims. (*See* 6/11/19 Rptr. Trans.,

18  pp. 507:22-534:3; 6/14/19 Rptr. Trans., pp. 578:4-666:8.)

19  In order to prevail on its ACPA counterclaim, IMI was required to prove each of the following

20  elements: (1)  Plaintiff registered, trafficked in, or used the imi.com domain name; (2)  Plaintiff's

21  imi.com domain name was identical or confusingly similar to a protected mark owned by IMI;

22  (3)  IMI's IMI mark was distinctive at the time Plaintiff registered the imi.com domain name; and

23  (4)  Plaintiff used the imi.com domain name with a bad faith intent to profit. *DSPT Intern., Inc. v.*

24  *Nahum*, 624 F.3d 1213, 1218–19, n.10 (citing 15 U.S.C. § 1125(d)). (*See* Dkt. 199, pp. 23:21-23:26.)

25  Plaintiff stipulated to the first two elements.  (6/14/19 Rptr. Trans., pp. 711:10711:3.)  At trial,

26  IMI presented documents and testimony on the remaining two elements to show both that its IMI

27  trademark was inherently distinctive at the time Plaintiff registered the *imi.com* domain name and that

28  he was using that domain name with a bad faith intent to profit.  In accordance with the Jury Instruction

that required the jury to determine distinctiveness by placing the mark along the spectrum of marks, IMI presented the following evidence to show that its IMI trademark was inherently distinctive at the time Plaintiff registered the *imi.com* domain name:  (1) since at least 1965, IMI had continuously used its IMI trademark as the source identifier for the concrete and aggregate goods it sold, including sand, stone, gravel and concrete; (2) since at least 1965, IMI had prominently displayed its IMI trademark on a wide range of advertising and marketing materials, on ready mix concrete trucks carrying its goods, and on company documents, buildings and signage; (3) its IMI trademark was twice registered by the PTO directly on the Principal Register and both registrations stated that the mark was first used at least as early as January 1, 1965; (4) "IMI" is not the name of any good IMI has ever sold; (5) "IMI" is not a generic term for nor does it describe any quality or characteristic of any good IMI has ever sold; and (6) IMI is arbitrary with respect to those goods.  (Dkt. 199, pp. 6:8-6:27, 7:1-7:7, JX-1, Def. and CC Exhibit 001, Def. and CC Exhibit 009, Def. and CC Exhibit 011, Def. and CC Exhibit 029, Def. and CC Exhibit 103; 6/14/19 Rptrs. Trans., pp. 587:14-592:7, 634:17-650:8.)

In addition, IMI presented the following evidence to show that Plaintiff was using the *imi.com* domain name with a bad faith intent to profit:  (1) for more than 15 years, Plaintiff did not use his website to make a bona fide offering of any goods or services; (2) for more than 15 years, Plaintiff displayed on his *www.imi.com* website his offer to sell the imi.com domain name for "not less than two million dollars"; (3) Plaintiff listed on his website a directory of the various IMI entities that he thought would be interested in purchasing the *imi.com* domain name to draw them to his website; (4) after IMI won the UDRP proceeding and Plaintiff received the arbitrator's written decision which found that Plaintiff's longstanding display of his offer to sell the *imi.com* domain name for not less than two million dollars and his failure to offer any good or service for sale demonstrated that he was using the *imi.com* domain name in bad faith, Plaintiff removed both his offer to sell and the entity list from his website;[4] (5) after IMI won the UDRP proceeding, Plaintiff named for the first time on a "coming soon" placeholder page International Monetary Investments, an entity he formed in

---

[4] IMI presented evidence that it won the UDRP proceeding and regarding the content of the arbitrator's order in support of its motion for summary judgment but not at trial because the Court granted Plaintiff's motion *in limine* precluding him from presenting that evidence at trial.  IMI presented evidence related to Plaintiff's changes to his website following the UDRP proceeding both in support of its motion for summary judgment and at trial.

Case No.: 5:17-cv-06734-LHK                                    – 5 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  November 2016; and (6) Plaintiff simultaneously negotiated with several entities to sell the *imi.com*

2  domain name, sparking a bidding war among those entities to bid up the price of the domain name

3  and, in his own words, "stupidly overpriced it" at $4 million before the interested entities went away.

4  (Dkt. 199, pp. 7:8-10:8, 11:11-11:17, 12:9-12:22; JX-2, JX-3, JX-4, JX-5, JX-7, JX-8, JX-9, Def. and

5  CC Exhibit 052, Def. and CC Exhibit 053; 6/11/19 Rptr. Trans., pp. 373:1-377:3, 6/14/19 Rptr. Trans,

6  pp. 655:8-656:20.)

7        At the end of IMI's case in chief, IMI brought a Rule 50(a) motion, which the Court granted

8  with respect to Plaintiff's acquiescence defense. (Dkt. 185, Dkt. 199, pp. 22:7-22:12; 6/14/19, Rptr.

9  Trans., pp. 680:1-680:4, 681:16-681:21.)

10        The Court found that IMI's case should go to the jury.  (6/14/19 Rptr. Trans., pp. 685:13-

11  685:18.)  The jury rendered a verdict against IMI on Plaintiff's declaratory relief claim (in an advisory

12  capacity) and on IMI's ACPA counterclaim.  (Dkt. 199.)  On August 10, 2019, the Court issued

13  findings of fact and conclusions of law, which stated that the jury's verdict on IMI's ACPA

14  counterclaim was supported by substantial evidence and issued a judgment for Plaintiff on his

15  declaratory relief claim.  (*Id.*, pp. 25:18-36:12.)

16  **III.**    **THIS CASE DOES NOT QUALIFY AS EXCEPTIONAL**

17        The Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749

18  (2014) clarified the standard for determining an "exceptional" case:  "Under the standard announced

19  today, a district court may award fees in the ***rare case*** in which a party's unreasonable conduct -- while

20  not necessarily independently sanctionable -- is nonetheless so 'exceptional' as to justify an award of

21  fees." *Octane,* 134 S. Ct. at 1756-57 (emphasis added).   The Supreme Court explained that "an

22  "exceptional" case is "one that stands out from others with respect to the substantive strength of a

23  party's litigating position (considering both the governing law and the facts of the case)", and directed

24  courts to consider factors such as "'frivolousness, motivation, objective unreasonableness (both in the

25  factual and legal components of the case) and the need in particular circumstances to advance

26  considerations of compensation and deterrence." *Id., accord SunEarth, Inc. v. Sun Earth Solar Power*

27  *Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc).

28        Courts routinely hold that an award of attorney's fees under the Lanham Act is not appropriate

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

where, as here, a non-prevailing party had a legitimate reason for bringing its claim, raised debatable issues, or achieved partial success.  *See Nutrivita Labs., Inc. v. VBS Distribution Inc*., 160 F.Supp.3d 1184, 1192 (C.D. Cal. 2016) ("In cases where the Ninth Circuit has affirmed the district court's denial of attorneys' fees based on a finding that (a Lanham Act) case was not exceptional, the key factor appears to be that the plaintiff raised 'debatable issues' and had a legitimate reason for bringing the lawsuit."); *Apple Inc. v. Samsung Elecs. Co.,* No. 11-CV-01846-LHK, 2014 WL 4145499, at *6 (N.D. Cal. Aug. 20, 2014) (denying attorney's fees where the defendant asserted defenses showing that it "might have reasonably thought" that its actions complied with the law); *Trowbridge Sidoti LLP v. Taylor,* No. 8:16-CV-00771-ODW-SK, 2018 WL 2670656, at *6 (C.D. Cal. June 4, 2018) ("If a plaintiff has raised 'debatable issues' and can be found to have had a legitimate reason for bringing the lawsuit, it supports a finding that a case is not exceptional.").

As set forth in detail below, IMI had a reasonable belief in the merits of its ACPA counterclaim, that counterclaim was supported by controlling Ninth Circuit authority, and IMI presented both substantial documentary evidence and detailed testimony to support each element of that counterclaim.

**A.  IMI's ACPA Counterclaim Was Supported By The Law And Evidence**

It is well settled that "the mere fact that (a party) lost cannot establish his objective unreasonability." *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1181 (9th Cir. 2013).  A claim that is reasonably supported by the law and some evidence (even if ultimately unsuccessful) is not frivolous or objectively unreasonable, and an award of attorney's fees under the Lanham Act is not proper. *Nutrivita Labs., Inc.,* 160 F.Supp.3d at 1192 ("the Ninth Circuit has held that "an action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits."); *Caiz v. Roberts*, No. CV1509044RSWLAGRX, 2017 WL 830386, at *5 (C.D. Cal. Mar. 2, 2017) ("While the standard for awarding attorneys' fees under 15 U.S.C. § 1117 has been relaxed, Defendants must still prove by a preponderance of the evidence and in light of the totality of the circumstances that the case is exceptional. . . . mere failure of proof on a claim or lack of success in a lawsuit is not sufficient to warrant a finding that a case is exceptional.").

IMI's ACPA counterclaim was supported by both the law and the evidence.

1.    Controlling Ninth Circuit Authority Supports IMI's ACPA Counterclaim

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Plaintiff argues that IMI's ACPA counterclaim was "objectively baseless" based on (i) the fact

2   that Plaintiff registered the imi.com domain name shortly before IMI registered its IMI trademark;

3   (ii) his assertion  that there was "no legally cognizable harm to" IMI; and (iii) the fact that shortly after

4   he registered the *imi.com* domain name, Plaintiff incorporated Internet Marketing Inc. – which he

5   claims used the domain name until it was sold in 1998.  (Motion, pp. 9:7-10:26.)  These arguments are

6   all contrary to the plain language of the ACPA, the controlling Ninth Circuit authority, and this Court's

7   prior orders.

8   ***First***, as the Court's summary judgment order and jury instructions recognize, neither the

9   ACPA nor the controlling Ninth Circuit authority required IMI to show that it owned a *registered*

10  trademark at the time Plaintiff registered the imi.com domain name; it only needed to show that it

11  owned a *distinctive* mark at that time.   A trademark that is "inherently distinctive" satisfies this

12  requirement.  S*ee DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-1222, n. 10 (9th Cir. 2010)

13  (stating the liability under the ACPA requires proof that a "protected mark" is distinctive and finding

14  against the domain name owner even though the trademark at issue was *never registered;* because it

15  was used in commerce it was protected by the common law); *Lahoti,* 636 F.3d at 505 (affirming the

16  district court's finding that an *unregistered* trademark was distinctive and that the domain name owner

17  violated the ACPA because that mark was used in commerce before the domain name was registered);

18  *See also* 6/14/19 Rptr. Trans., pp. 710:17-710:25 (ACPA jury instruction).

19  IMI presented substantial documentary evidence and detailed testimony that (i) it had

20  established common law rights in its IMI trademark long before Plaintiff registered the *imi.com*

21  domain name by prominently and continuously using that mark as the source identifier for its goods

22  since at least as early as 1965; and (ii) that its IMI mark was inherently distinctive because it was not

23  the name of any goods IMI sold and did not describe any quality or characteristic of  any such goods

24  (*i.e.,* it was not generic or descriptive) and the PTO twice registered that mark without requiring IMI

25  to submit any proof of secondary meaning.  (*See* Dkt. 83, pp. 7:9-11:15; Dkt. 199, pp. 23:21-23:26,

26  6/14/19 Rptr. Trans., pp. 710:17-71-:25, 711:4-716:11.)  Based on this evidence, a jury reasonably

27  could have concluded that IMI's trademark was inherently distinctive, and therefore distinctive from

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    the moment it was first used in January of 1965. (*See* Dkt. 83, pp. 7:9-11:15.)[5]

2         **Second,** the ACPA did not require IMI to present evidence of consumer confusion or

3    cognizable harm; neither one is a required element of an ACPA claim. (Motion, pp. 9:24-9:26, 12:3-

4    12:11.) *See* 6/14/19 Rptr. Trans., pp. 7120:17-710:25 (jury instruction listing ACPA elements).

5         **Third**, these same published Ninth Circuit decisions also have squarely rejected Plaintiff's

6    argument that liability under the ACPA can be based only on a party's bad faith intent at the time he

7    *registers a domain name* (Motion, pp. 9:14-10:3).   On the contrary, the law is clear: even if a party

8    initially registers a domain name in good faith, his subsequent *use of that domain name* with a bad

9    faith intent to profit violates the ACPA.  *See DSPT Intern.,* 624 F.3d at 1218-1220 ("The statute says

10   "registers, traffics in, or uses," with "or" between the terms, so use alone is enough to support a verdict,

11   even in the absence of violative registration or trafficking."); *Lahoti v. VeriCheck, Inc.,* 586 F.3d 1190,

12   1202 (9th Cir. 2009) ("(e)vidence of bad faith may arise well after registration of the domain name.");

13   *Symantec Corp. v. Johns Creek Software, Inc.*, No. C 11-03146 WHA, 2012 WL 10518, at *2 (N.D.

14   Cal. Jan. 3, 2012) ("A person is liable under the ACPA if that person has a bad faith intent to profit

15   from a mark and registers, traffics in, or uses a domain name that is identical or confusingly similar to

16   that mark.  15 U.S.C. 1125(d)(1)(A).  There is no requirement that the domain name registrant must

17   have a bad faith intent *both at the time of registration and during the entire course of use of the domain*

18   *name.*") (Emphasis added).

19        **Finally**, and importantly, Plaintiff ignores the critical facts that IMI won both summary

20   judgment on Plaintiff's claim against it for reverse domain name hijacking (which also precluded

21   Plaintiff from recovering any damages from IMI) and its Rule 50(a) motion for judgment on Plaintiff's

22   acquiescence defense.  "[W]here a party has set forth some good faith argument in favor of its position,

23   it will generally not be found to have advanced exceptionally meritless claims."  *Deckers Outdoor*

24   *Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW (Cwx), 2016 WL 5842187, at *3 (C.D. Cal.

25   Oct. 5, 2016) (internal quotation marks and citation omitted); *accord Sophia & Chloe, Inc. v. Brighton*

---

[5]  The Court's distinctiveness jury instructions demonstrate that this theory was not "objectively
baseless," but was, instead, grounded in the law.  (6/14/19 Rptr. Trans., pp. 7:11-4-718:15.)  As the
Court's jury instructions stated: "Only if you determine that Irving Materials Incorporated's mark is
not inherently distinctive should you consider whether it is descriptive but became distinctive through
the development of secondary meaning."  (*Id.*, pp. 711:4-711:12.)

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKTS 201]

*Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2019 WL 1429588, at *10 (S.D. Cal. Mar. 29, 2019).

Thus, considering the totality of the circumstances, including the legal support for IMI's position and its partial success on these dispositive motions, IMI did not pursue an objectively unreasonable claim, and this is not an exceptional case appropriate for an award of attorney's fees.

2.  <u>IMI's ACPA Counterclaim Was Reasonably Supported By Both The Documents And The Testimony It Introduced at Trial</u>

Plaintiff also claims that IMI's ACPA counterclaim was "objectively baseless" based on his bare assertions that IMI had "almost no evidence to support it" and did not "come close to proving its trademark was distinctive in 1994."   (Motion, pp. 9:23-9:24.)   On the contrary, IMI presented substantial evidence to support each element of its ACPA claim, including the following:

(1) documents and testimony that showed that its IMI trademark, when placed along the spectrum of marks, was inherently distinctive, including evidence that it was neither generic nor descriptive of the concrete and aggregate goods sold under that mark and was, instead, arbitrary when applied to those goods; and that the PTO twice registered that trademark without requiring proof of secondary meaning, and both registrations identified IMI's date of first use of the mark as 1965, 29 years *before* Plaintiff registered the *imi.com* domain name (Dkt. 199, pp. 7:1-7:7, JX-1, Def. and CC Exhibit 009, Def. and CC Exhibit 011, Def. and CC Exhibit 103);

(2) documents and testimony that showed that IMI has used its inherently distinctive IMI trademark as the source identifier for its goods since at least as early as 1965, 29 years before Plaintiff registered the *imi.com* domain name.  (Dkt. 199, pp. 6:8-6:27; Def. and CC Exhibit 001, Def. and CC Exhibit 029; 6/14/19 Rptrs. Trans., pp. 587:14-592:7, 634:17-650:8);

(3) documents and testimony that showed that from 2002 until March of 2018 (5 months after Plaintiff brought this lawsuit), a period of more than 15 years, he never used his *www.imi.com* website to offer to sell any good or service but, instead, used it to prominently display his offer to sell the *imi.com* domain name for not less than 2 million dollars (JX-2, JX-3, JX-4, JX-5, JX-7, JX-8, JX-9, Def. and CC Exhibit 052, Def. and CC Exhibit 053);

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1       (4) documents and testimony that showed that, in response to the arbitrator's order in

2    the UDRP proceeding, 5 months after Plaintiff filed this lawsuit, he changed his website to

3    remove his longstanding offer to sell the imi.com domain name and, for the first time, added

4    a reference to a new IMI entity, International Monetary Investments[6] (Dkt. 199, pp. 7:8-9:9,

5    11:11-11:17, 12:9-12:22; JX-2, JX-3, JX-4, JX-5, JX-7, JX-8, JX-9, Def. and CC Exhibit 052,

6    Def. and CC Exhibit 053; 6/14/19 Rptr. Trans, pp. 655:8-656:20); and

7       (5) documents and testimony that detailed Plaintiff's attempts to sell the *imi.com*

8    domain name to the highest bidder, including his unsuccessful attempt to sell the domain

9    name for $4 million, and Plaintiff's admission at trial that he intended to create a "bidding

10   war" and "stupidly overpriced" the domain name causing interested buyers to go away . (Dkt.

11   199, pp. 7:8-10:8; JX-1, JX-7, 6/11/19 Rptr. Trans., pp. 373:1-377:3.)

12      *First*, under the controlling legal authority, the evidence IMI introduced about the goods it

13   sells under its IMI trademark, including testimony that it does not sell any good named "IMI" and that

14   IMI does not describe the quality or characteristic of any good IMI sells, reasonably supported a

15   conclusion that IMI's trademark was suggestive or arbitrary, and therefore "inherently distinctive" at

16   the time Plaintiff registered the *imi.com* domain name. (6/11/19 Rptr. Trans., pp. 520:20-522:24.) *Two*

17   *Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("Suggestive," or "arbitrary" marks are

18   inherently distinctive and are entitled to registration on the Principal Register without any showing of

19   acquired distinctiveness, *i.e.*, secondary meaning; "generic" or "descriptive" marks are not); *KP*

20   *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005) (same).  In

21   fact, the Court's findings of fact and conclusions of law quote this legal standard.  (Dkt. 199, pp. 24:4-

22   24:22.)

23      *Second*, under the controlling legal authority, the evidence IMI introduced about the PTO's

24   registration of the IMI trademark on the Principal Register without requiring any showing of secondary

25   meaning and its continuous use of that mark as the source identifier for its goods since 1965, also

26   reasonably supported a conclusion that the IMI trademark was distinctive at the time Plaintiff

27

28   [6] Based, in part, on Plaintiff's admissions in his deposition, at trial, IMI contended that he made these changes to disguise his bad faith intent to profit.

Case No.: 5:17-cv-06734-LHK      – 11 –

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKTS 201]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

registered the *imi.com* domain name.  *See, supra,* discussion of *DSPT Intern.,* 624 F.3d at 1218-1222; *Lahoti,* 636 F.3d at 505; *see also Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113–14 (9th Cir. 2010) ("Where the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive.")  The Ninth Circuit has relied on the PTO's registration of a trademark to conclude that a mark is inherently distinctive. *See Lahoti,* 586 F.3d at 1199 ("There can be no serious dispute with the principle that a federal trademark registration of a particular mark supports the distinctiveness of that mark, because the PTO should not otherwise give it protection.") Accordingly, the fact that the PTO twice registered the IMI trademark reflects its determination that the IMI trademark was inherently distinctive, and IMI's use of that same mark for 29 years before Plaintiff registered the domain name supports IMI's position that its inherently distinctive trademark was also distinctive prior to Plaintiff's registration of the domain name.[7]  The Court's summary judgment order confirms that these legal arguments were reasonable.  (*See* Dkt. 83, pp. 7:9-11:15.)

**Third**, under the controlling legal authority, the evidence IMI introduced about Plaintiff's failure to use his *www.imi.com* website to offer to sell any good or service, his longstanding offer to sell the domain name for not less than $2 million and the changes he made to the website after the UDRP proceeding to delete that offer to sell and to add a reference to his newly formed entity, International Monetary Investments, could reasonably have supported a conclusion that Plaintiff acted with a bad faith intent to profit in violation of the ACPA.  The Court repeatedly confirmed this:

> "(T)he initiation of the UDRP proceeding is highly probative because Black took actions, including altering the imi.com website, *after* the UDRP proceeding was initiated. Irving argues Black's actions post-UDRP proceeding demonstrate Black's bad faith, which is an element of Irving's Anti-Cybersquatting Consumer Protection Act ("ACPA") cybersquatting (15 U.S.C. § 1125(d)) counterclaim.  *See, e.g., Shields v. Zuccarini,* 254 F.3d 476, 480 (3d Cir. 2001) (finding bad faith where the domain name owner changed his websites after the lawsuit for violation of the ACPA was filed); *E. & J. Gallo Winery v. Spider Webs Ltd.,* 286 F.3d 270, 276 (5th Cir. 2002) ("(W)hen a registrant first uses a web site after litigation begins,

---

[7] Moreover, even if IMI was required to prove that its trademark had acquired secondary meaning, this same evidence could reasonably support the conclusion that it had.  *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1151 (9th Cir. 1999) ("Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, *manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers;* established place in the market; and proof of intentional copying by the defendant." (Emphasis added.))

1
2
this undermines any claim that the use was in good faith or was a fair use under the ACPA."). The court agrees that the initiation of the UDRP proceeding and Black's subsequent actions are highly relevant to the 'bad faith' inquiry."' (*See* Dkt. 129, pp. 3:16-4:2.)

3
4
5
"Evidence of Black's business activities after October 11, 2017 is relevant because Black's new business activities after the October 2017 UDRP proceeding could support a finding that Black acted in bad faith. *See, e.g.*, *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000) (considering bad faith factors and finding bad faith where new "use" was an attempt to avoid ACPA liability)." (*Id.*, pp. 7:5-7:9.)

6
7
8
*See also*, Dkt. 83, pp. 7:16-17:25; 6/14/19, Rptr. Trans., pp. 563:13-565:16 ("So the case law cited by Irving demonstrates that changing the website after the UDRP proceeding is relevant to the bad faith inquiry.").

9
10
11
12
13
14
15
16
*Fourth*, under the controlling legal authority, the evidence IMI introduced about Plaintiff's attempts to sell the domain name for up to $4 million, including his testimony about creating a bidding war and "stupidly overpricing" the domain name, likewise reasonably supported a finding that he used the domain name with a bad faith intent to profit in violation of the ACPA. *See Lahoti,* 586 F.3d at 1202 (a "willingness to sell the Domain Name only for an exorbitant profit (is a) quintessential cybersquatting practice()" and finding a five-figure sum to be exorbitant); *DSPT Int'l, Inc.,* 624 F.3d at 1221 ("The 'intent to profit,' . . . means simply the intent to get money or other valuable consideration"). *See also* Dkt. 83, pp. 7:16-17:25.

17
18
19
20
21
22
23
24
25
26
27
Simply put, the fact that the jury rendered a verdict against IMI does not mean that IMI failed to provide any reasonable evidence to support its ACPA counterclaim or that the prosecution of its ACPA counterclaim was exceptional. If that were the standard, the exception would swallow the rule. *See Applied Information Sciences Corp. v. eBay, Inc.,* 511 F.3d 966, 973 (9th Cir. 2007) (denying fees because the "(plaintiff's) case was not frivolous and . . . (plaintiff) raised debatable issues."; the court "(found) no compelling proof that (plaintiff) acted capriciously or pursued litigation to harass (defendant), or that (plaintiff) intended to bring a meritless or unreasonable case against (defendant)." ); *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 218CV00923SVWRAO, 2019 WL 2762936, at *30 (C.D. Cal. July 1, 2019) ("The Court holds that this case does not rise to the level of an "exceptional" case necessitating an award of attorneys' fees. Cliffside's defense throughout this case was not one of frivolity, and none of Cliffside's legal arguments advanced during

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   trial were objectively unreasonable. . . . Cliffside undoubtedly was motivated to pursue this case to its

2   conclusion based on Cliffside's subjective belief in the strength of its litigating position, which was

3   ultimately rejected by the jury."); *Sophia & Chloe, Inc.*, 2019 WL 1429588, at *10 ("(M)ere failure of

4   proof on a claim or lack of success in a lawsuit is not sufficient to warrant a finding that a case is

5   exceptional.); *Caiz v. Roberts*, No. CV1509044RSWLAGRX, 2017 WL 830386, at *5 (C.D. Cal.

6   Mar. 2, 2017) (same).

7          3.      <u>Plaintiff Has Failed To Identify Any Legal Authority to Support His Assertion</u>

8                  <u>That IMI's ACPA Counterclaim Was "Objectively Unreasonable"</u>

9          Ignoring the binding Ninth Circuit precedent described in Sections 1 and 2 above, Plaintiff

10  relied instead on three unpublished district court cases, including one from out of circuit, to support

11  his assertion that IMI's ACPA counterclaim was objectively unreasonable and that this case is

12  "exceptional".  (Motion, pp. 10:8-10:26.)

13         Plaintiff relies most heavily on Judge Orrick's decision in *Sazerac Co., Inc. v. Fetzer*

14  *Vineyards, Inc.*, No. 3:15-CV-04618-WHO, 2017 WL 6059271, at *4 (N.D. Cal. Dec. 7, 2017) in

15  which the Court awarded attorney's fees under the Lanham Act.  (Motion, pp. 8:13-8:21, 11:1-11:12.)

16  However, Plaintiff misconstrues that decision.  Plaintiff argues that because the Court in *Sazerac* found

17  that case to be exceptional because the trademark owner "failed to prove distinctiveness and failed to

18  prove any harm," this Court should award fees here.  (Motion, pp. 11:1-11:12.)  Not only was *Sazerac*

19  not an ACPA case, but the Court's opinion clearly demonstrates why it is distinguishable:

20         "*Sazerac* may have had a subjectively legitimate reason for bringing this lawsuit and it raised
           "debatable issues" sufficient to defeat Fetzer's motion for summary judgment as to two of its
21         trademark claims and its trade dress infringement claim.  *See Nutrivita Labs., Inc. v. VBS*
           *Distribution Inc.*, 160 F.Supp.3d 1184, 1192 (C.D. Cal. 2016)("In cases where the Ninth
22         Circuit has affirmed the district court's denial of attorneys' fees based on a finding that (a
           Lanham Act) case was not exceptional, the key factor appears to be that the plaintiff raised
23         'debatable issues' and had a legitimate reason for bringing the lawsuit.")(quoting another
           source).  ***But, once it forfeited the right to pursue damages and the case "officially" became***
24         ***about injunctive relief, it was unreasonable for it not to present any evidence of irreparable***
           ***harm***." ) (Emphasis added.) 2017 WL 6059271, at *8.
25

26  The Court's decision to award attorney's fees was based on the fact that the plaintiff  failed to present

27  any evidence at all on the issue of irreparable harm even though this was a *required element* of his

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   *only* claim for relief.  *Id.* at *4-11. [8]  In contrast, here, the ACPA does not require a showing of

2   irreparable harm to support the transfer of the *imi.com* domain name from Plaintiff to IMI, and IMI

3   sought both the transfer of the domain name and an award of statutory damages.  Unlike the plaintiff

4   in *Sazerac*, here, IMI presented evidence to support each element of its ACPA counterclaim and raised

5   debatable issues, and its arguments in support of its counterclaim that were neither frivolous nor

6   objectively unreasonable.  (*See* Sections III.A.1 and III.A.2 above.)

7         Plaintiff's reliance on *AirFX.com v. AirFX, LLC*, 2013 WL 857976 at *3 (D. Ariz. Mar. 7,

8   2013) is equally misplaced.  Plaintiff contends that this unpublished case supports his assertion that

9   IMI should have dismissed its ACPA counterclaim after it discovered that Plaintiff had registered the

10  *imi.com* domain name prior to the time IMI registered its IMI trademark.  (Motion, pp. 7:15-7:20,

11  10:8-10:13.)   Controlling Ninth Circuit authority discussed above holds exactly the opposite.   A

12  trademark registration is not a required element of an ACPA claim; the mark need only be distinctive.

13  *See* 15 U.S.C. § 1125(d); 6/14/19 Rptr. Trans., pp. 710:17-710:25.  In addition, in *AirFx.com,* the court

14  awarded attorney's fees to a prevailing plaintiff who won a motion for summary judgment on both its

15  claim  for  reverse  domain  name  hijacking  *and*  the  defendants'  counterclaims  for  trademark

16  infringement and cybersquatting.  *Id.* at *1.  In stark contrast, here the Court *denied* Plaintiff's motion

17  for summary judgment on all claims and *granted* IMI's motion for summary judgment on Plaintiff's

18  reverse domain name hijacking claim and sent IMI's case to trial.  (Dkt. 199, pp. 17:7-18:9.)

---

19  [8] Plaintiff also quotes from this case a paragraph that contains string cites to two additional cases, both
    of which demonstrate why an award of attorney's fees here is not appropriate (Motion, pp. 8:14-8:21):

20      (1) In *Amusement Art, LLC v. Life is Beautiful, LLC*, No. 214CV08290DDPJPR, 2017 WL
    2259672, at *3 (C.D. Cal. May 23, 2017), aff'd in part, vacated in part, remanded, 768 F. App'x

21  683 (9th Cir. 2019), the court awarded attorney's fees because the plaintiff's conduct was
    fraudulent and the claims it brought were "based on eight fraudulently-obtained registrations".

22  The court explained:  "courts have routinely found that cases where a Plaintiff engaged in fraud
    on the trademark office are "exceptional" under the Lanham Act." *Id.*  The Ninth Circuit affirmed:

23  "The claims for registered marks were "exceptional" because the registrations were procured
    fraudulently, which AA acknowledges is a basis for § 1117(a) fee award."  *Amusement Art, LLC*

24  *v. Life Is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. 2019).  In stark contrast here, IMI's
    ACPA counterclaim was not based on any fraudulent conduct.

25      (2) *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13CV651 JLS (MDD), 2017 WL 1235766, at
    *3 (S.D. Cal. Apr. 4, 2017), reconsideration denied, No. 13-CV-651 JLS (MDD), 2017 WL

26  4792426 (S.D. Cal. Oct. 24, 2017) is a patent infringement case that considered a fee award under
    35 U.S.C. § 285, not Section 1117(a).  Moreover, the award of attorney's fees in that case was

27  based in large part on the plaintiff's failure to conduct a pre-filing investigation, *which is a
    requirement in a lawsuit that asserts a claim for patent infringement*, and pursued a "frivolous

28  claim".  *Id.* at *3-7.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Finally, Plaintiff's reliance on *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co*., LLC,

2    No. 4:16-CV-00427-DCN, 2018 WL 6186798, at *3 (D. Idaho Nov. 27, 2018) also is unavailing.

3    (Motion, pp. 10:13-10:26.)  There, the plaintiff brought a claim for trademark infringement (not for

4    violation of the ACPA) against the owner of a website who unknowingly and inadvertently failed to

5    disable a webpage that included the plaintiff's registered trademark (the website owner did not know

6    that website was live or accessible). *Id.*  The district court granted summary judgment for the webpage

7    owner and awarded attorney's fees because: (i) the trademark infringement claim was brought *after*

8    the infringing webpage was removed; (ii) the plaintiff knew that the infringing webpage was never

9    used in commerce (a necessary element of a trademark infringement claim); and (iii) the plaintiff knew

10   that the infringing webpage could not be found unless a consumer "manually (letter by letter) typed

11   (it) into a search browser" (*i.e.,* it knew that a likelihood of consumer confusion, which was also a

12   necessary element of plaintiff's trademark infringement claim, did not occur).  IMI did not assert a

13   trademark infringement claim, and thus the reasoning for awarding attorney's fees in *Nelson-Ricks*

14   does not apply here.  Neither use in commerce nor consumer confusion are required elements of an

15   ACPA claim.[9]  Moreover, as set forth in Sections III.A.1 and III.A.2 above, IMI had both legal and

16   evidentiary support for its counterclaim.

17       In addition, Plaintiff claims that he suffered significant damages from the UDRP action and

18   the alleged reverse domain name hijacking.  These damages allegedly resulted from the "lockdown"

19   of the *imi.com* domain name after IMI's successful UDRP proceeding which, in turn, resulted in the

20   alleged withdrawal of financing from Plaintiff's purported new business.  Plaintiff urges the Court to

21   find that these alleged damages make this an "exceptional" case.  (Motion, pp. 5:17-6:2, 10:1-10:3,

22   14:15-14:18).  This argument should be disregarded by the Court because these alleged damages:

23   (i) are not in the record; (ii) flowed from the UDRP proceeding that IMI won, not its ACPA claim in

24   this case; and (iii) are the damages component of Plaintiff's reverse domain name highjacking claim

25   on which he was not the prevailing party.  Because the Court repeatedly held that Plaintiff did not have

---

26

27   [9] Plaintiff's statements that IMI "did not provide any notice of alleged infringement" and that, had it

28   done so, the evidence is undisputed that he would have removed IMI from his directory are irrelevant. (Motion, pp. 10:20-10:25.)  IMI did not bring a claim for trademark infringement in this lawsuit, and was not required to provide any such notice.

1   a damages claim against IMI, any claimed damages should not be considered in deciding this motion.

2       In sum, Plaintiff has no pertinent authority to support his assertions that this case is exceptional

3   or that IMI's ACPA counterclaim was objectively baseless.

4   **B.    IMI Brought Its ACPA Counterclaim In Good Faith**

5       Plaintiff also argues that IMI had "foul" motives for bringing its ACPA counterclaim, which

6   he bases on his assertion that neither consumers nor IMI were harmed by Plaintiff's squatting on the

7   imi.com domain name. (Motion, pp. 11:13-12:14.)  As detailed in Section III.A.1 above, not only are

8   these not required elements of an ACPA claim, but IMI presented testimony about the importance of

9   having the *imi.com* domain name for its business and the harm not having the domain name was

10  causing. (*See* 6/14/19 Rptr. Trans., pp. 580:22-581:6, 652:17-654:23.)  Further, Plaintiff offers nothing

11  to support his accusation, nor could he: (i) neither the jury nor the Court found that IMI was an

12  overreaching trademark owner; (ii) neither the jury nor the Court found IMI acted in bad faith or

13  harmed Plaintiff in any way; (iii) neither the jury nor the Court found that IMI's position was

14  unreasonable, illegitimate or foul; and (iv) neither the jury nor the Court found that IMI failed to

15  provide any evidence to support its position. (Dkt. 199.)  The Court also has made clear that IMI's

16  conduct was not at issue in this lawsuit.  (Dkt. 172; Dkt. 199, pp. 17:7-19:7; 20:15-21:25; 6/14/19

17  Rptr.  Trans., pp. 574:17–577:17.)  Thus, Plaintiff's contentions that he has "proven" that IMI caused

18  him harm "through its abusive use of the UDRP and ACPA" and that he has proven "(b)y a

19  preponderance of the evidence . . . that Irving abused its trademark rights by prosecuting its ACPA

20  counterclaim" are wholly unsupported by the record.  (Motion, pp. 14:11-14:20, 15:18-15:22.)

21      Plaintiff's claims that IMI brought its ACPA counterclaim "solely for their own selfish

22  business desires" and because IMI's "marketing people decided they wanted imi.com" (Motion,

23  pp. 12:3-12:11) are red herrings.  Of course IMI believed it was in its business interest to bring the

24  ACPA counterclaim after it had won the UDRP action.  The question, however, is whether it acted in

25  bad faith and the record evidence answers that with a resounding "no."(Dkt. 199.) IMI's three

26  witnesses described in detail their good faith motives, their well-founded belief that the *imi.com*

27  domain name was important to IMI's business, and the basis for their reasonable belief that Plaintiff

28  was squatting on the *imi.com* domain name.  (*See* 6/11/19 Rptr. Trans., pp. 395:3-426:20, 497:20-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Case No.: 5:17-cv-06734-LHK        – 17 –

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKTS 201]

505:12; 6/14/19/ Rptr. Trans., pp. 578:12-663:20.)   More specifically, IMI presented evidence that following a survey of its customers and research about its marketing and branding strategies, which confirmed that IMI's customers associated its goods with the IMI trademark, IMI developed a new strategy to ensure that its IMI branding was consistent across marketing channels, including on the internet.  (6/14/19 Rptr. Trans., pp. 614:14-614:23, 652:14-655:7)  This new strategy led IMI to visit Plaintiff's *www.imi.com* website in 2017.   Based upon the content of that website, and relying on advice from its marketing firm, IMI brought and won a UDRP proceeding against Plaintiff.  (*See* Dkt. 83; Dkt. 129, pp. 3:13-4:24; Dkt. 199, pp. 12:23-13:1, 6/14/19 Rptr. Trans., pp. 614:14-615:14, 6532:14-655:15.)

There is no evidence that these witnesses testified untruthfully and there is no support for Plaintiff's argument that IMI had the bad faith or illegitimate motive required to meet the "exceptional" standard.  *See Applied information Sciences Corp.,* 511 F.3d. at 973 (affirming denial of fees because there was "no compelling proof that (plaintiff) acted capriciously or pursued litigation to harass" or "intended to bring a meritless or unreasonable case"); *Grasshopper House, LLC*, 2019 WL 2762936, at *30 (holding that a claim motivated by a "subjective belief in the strength of its litigating position" is reasonable and precludes an award of attorney's fees).

Further, Plaintiff's Motion ignores the procedural history of this lawsuit.  Plaintiff – not IMI – brought this lawsuit. (Dkt. 199, pp. 13:17-13:24.)  IMI's ACPA counterclaim is a mirror image the declaratory relief claim that Plaintiff independently asserted and took to trial.   IMI did not act unreasonably, maliciously or fraudulently; it asserted a legitimate defense to the claim Plaintiff brought and pursued through trial. (Motion, pp. 11:10-11:12.)[10]   *See Talent Mobile Dev., Inc. v. Headios Grp*., 382 F. Supp. 3d 953, 964 (C.D. Cal. 2019) (finding that the "Defendants had every right to assert counterclaims . . . ." and declining to award attorney's fees under the Lanham Act).

---

[10] To the extent Plaintiff's Motion is intended to argue that IMI had bad faith motives in commencing the UDRP proceeding, those arguments should be disregarded. IMI won the UDRP. Moreover, Plaintiff successfully filed a motion *in limine* to exclude all testimony and evidence about the UDRP proceeding.  [Dkt. 129.]  IMI was not allowed to present any evidence about the UDRP or to state that it won the UDRP.  Plaintiff's arguments about the UDRP to support this motion are inappropriate.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**C.      Plaintiff Relies On His *Dismissed* Reverse Domain Name Hijacking Claim To Argue**
**That IMI Acted In Bad Faith And That This Case Is Exceptional**

Plaintiff also argues that IMI's motives were "illegitimate" and that this case is exceptional because reverse domain name hijacking statutes were enacted to deter overreaching trademark owners. (Motion, pp. 11, fn 1; 11:13-14:20.)  This argument plainly ignores both the fact that Plaintiff did not have a reverse domain name hijacking claim at trial, *and* that this Court has clearly and unequivocally warned Plaintiff that he does not have either a claim for reverse domain name hijacking or any other affirmative claim against IMI.  The Court warned Plaintiff's counsel on the final day of trial:

> "If you keep trying to say that you have an affirmative claim that Irving violated the ACPA, you don't, and I will sanction you because I don't – you know, how many orders have I said, you don't have a section (iv) claim? Look at the statutory text.  Section (iv) is the affirmative claim against Irving.  Section (v) is not.  It only gives declaratory injunctive relief." *See* 6/14/19 Rptr. Trans., pp. 575:25-576:6; *see also,* Dkt. 172; Dkt. 199, pp. 17:7-19:7; 20:15-21:25; 6/14/19 Rptr. Trans., pp. 574:17–577:17.)

Once again, Plaintiff has ignored this warning.  He now asks the Court to award him attorney's fees because "the purpose of the reverse domain name hijacking (RDNH) protections built into the ACPA is to deter this sort of abusive conduct" and subsection (v) of the statute (Plaintiff's only surviving claim) "was also designed to protect registrants like Mr. Black from overreaching trademark owners like Irving".  (Motion, pp. 12:16-13:14)  Plaintiff also asserts that he has proven "by a preponderance of the evidence . . . that Irving abused its trademark rights by prosecuting its ACPA counterclaim" (Motion, 15:18-15:19).  But Plaintiff's failure of proof, no matter how many ways he tries to recast it, cannot furnish alternative support for an exceptional case finding.  Quite the contrary, the Court's repeated rejection of this claim refutes such a finding.

In sum, on balance and considering the totality of circumstances, this case is not one that rises to the exceptional level required to award attorney's fees under the Lanham Act.  Because Plaintiff's Motion fails to identify any fact or law that would demonstrate that this case is exceptional under the Lanham Act, it should be denied.  *See Rolex Watch, U.S.A., Inc. v. Michel Co.,* 179 F.3d 704, 711 (9th Cir. 1999) ("(A)wards are never automatic and may be limited by equitable considerations") (internal quotation marks and citation omitted); *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1134 (9th Cir. 1986) (pointing out that under the Lanham Act, while courts "may" award fees in exceptional

1   cases, the Act does not require them); *Apple Inc.,* 2014 WL 4145499, at *11 (same); *ThermoLife Int'l,*

2   *LLC,* 2017 WL 1235766, at *4 (same).

3   **IV.     PLAINTIFF'S REQUESTED FEES ARE NOT REASONABLE**

4          Plaintiff's motion also should be denied because Plaintiff has failed to submit sufficient

5   evidence to support the requested fees.  Plaintiff's counsel asserts that his firm's fees are reasonable

6   because his rates are lower than IMI's counsel's rates.  (Motion, pp. 14:21-15:15.)  In support of this

7   statement, Plaintiff's counsel relies on his "years of experience" and his "familiarity with" the billing

8   rates of boutique IP law firms. (Dkt. 201-1, ¶ 7.) This is not sufficient to satisfy his obligations.  "The

9   fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its

10  counsel, that the requested rates are in line with those prevailing in the community for similar

11  services." *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 622–23 (9th Cir. 1993).  Plaintiff's counsel

12  does not provide any information about his experience, or the experience of his associates,

13  Ms. Richmond and Mr. Blumberg, and he does not provide any information about the rates of

14  comparable firms to support his statement.

15         In addition, although Plaintiff's counsel states that all 1143 of the hours his firm worked on

16  this matter are reasonable, he fails to attach or a single bill or any other underlying materials that break

17  down the tasks performed, the hours worked, the rates charged, or the fees billed and paid with respect

18  to each such task to support this statement.  (Motion, pp. 14:21-15:15.)  *See Intel Corp.,* 6 F.3d at 622–

19  23 (setting aside a fee award based on summaries of hours works rather than the underlying materials);

20  *Gracie v. Gracie,* 217 F.3d 1060, 1071 (9th Cir. 2000) (same).   Under these circumstances, neither

21  IMI nor the Court has sufficient information to determine whether fees were actually incurred, whether

22  the charges are appropriate or whether all 1143 hours worked were reasonable, necessary and non-

23  duplicative. (Dkt. 201-1, ¶ 4.)  Plaintiff's counsel's "summary" of the work performed (*Id.,* ¶ 5), does

24  not offer the Court or IMI any further detail; it is nothing more than a general list of routine litigation

25  activities and deprives IMI of a full and fair opportunity to review and object to the fee demand.  *Intel*

26  *Corp.,* 6 F.3d at 622–23 (stating the defendant had a right to "peruse and parse" the fee demand);

27  *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1385 (9th Cir. 1984) (reversing an award of attorneys'

28  fees even where counsel provided extensive records to show how much time had been spent on the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT AND COUNTERCLAIMANT IRVING MATERIALS, INC.'S OPPOSITION TO PLAINTIFF AND
COUNTER-DEFENDANT JEFFERY DEAN BLACK'S MOTION FOR ATTORNEYS' FEES [DKTS 201]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    case because "there (was) no showing that the time actually spent was reasonably necessary.")

2    Because Plaintiff failed to satisfy his obligation to support his request for fees, his Motion should be

3    denied in its entirety.

4         Moreover, while Plaintiff's counsel requests an award for every hour spent on this case, that

5    request is not meritorious. ***First***, Plaintiff incorrectly states that he prevailed on all claims. (Motion,

6    pp. 15:13-15:15.) The claims that went to trial were variations of one claim: whether Plaintiff violated

7    the ACPA. (*See* Dkt. 83, pp. 7:6-7:8.) The only other substantive claim he asserted in this lawsuit

8    was whether IMI engaged in reverse domain name hijacking, and the Court dismissed that claim on

9    the summary judgment. Thus, Plaintiff only prevailed on one of two substantive claims in this lawsuit

10   and any award cannot include fees incurred for his dismissed reverse domain name hijacking claim.

11   *Gracie*, 217 F. 3d at 1069 (a fee award under the Lanham Act cannot include fees incurred in litigating

12   non-Lanham Act claims or for claims on which the requesting party did not prevail). Because Plaintiff

13   has not provided any bills or any details of his counsel's work, neither the Court nor IMI can identify

14   what specific reductions are appropriate.

15        ***Second***, at least some additional hours Plaintiff's counsel worked were unnecessary and

16   unjustified. Plaintiff (i) filed baseless motions during trial, including an untimely motion *in limine*

17   after trial started (Dkts. 180, 181, 182; 6/14/19, Rptr. Trans., pp. 563:13-572:20); (ii) pursued (and

18   proposed jury instructions and verdict form questions) for an acquiescence defense, which he

19   conceded had no merit (Dkt.185, Dkt. 199, pp. 22:7-22:12; 6/14/19, Rptr. Trans., pp. 680:1-680:4,

20   681:16-681:21); and (iii) repeatedly disregarded this Court's order granting IMI's Motion for

21   Summary Judgment on his claim for reverse domain name hijacking (and he does so again with this

22   Motion, *see* Section III.C. above), including repeatedly making written and oral arguments, proposing

23   jury instructions, proposing verdict form questions, and filing pretrial documents (including a request

24   for damages) related to this dismissed claim. (Dkts. 172, 199, pp. 7:7-18:9, 20:2-21:25.). Any time

25   spent on these unnecessary tasks is neither reasonable nor recoupable, and Plaintiff's request for such

26   fees is improper. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for the prevailing party

27   should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or

28   otherwise unnecessary . . . .")

## V.    <u>CONCLUSION</u>

For all of the forgoing reasons, IMI respectfully requests the Court deny Plaintiff's Motion for Attorney's Fees.  In the event that the Court grants Plaintiff's Motion, IMI also respectfully requests that any award be substantially reduced, and that IMI be given an opportunity to review the bills so that it can raise appropriate objections and identify specific areas for reduction.


 Dated:  September 6, 2019                         REED SMITH LLP


                                                  By: _/s/Kathyleen A. O'Brien_____
                                                      Kathyleen A. O'Brien
                                                      Carla M. Wirtschafter
                                                      Attorneys for Irving Materials, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

By: _/s/ Kathyleen A. O'Brien_
REED SMITH LLP
Kathyleen A. O'Brien (94218)
1901 Avenue of the Stars, Suite 700
Los Angeles, CA  90067-6078
Telephone: (310) 734-5418
Facsimile:  (310) 734-5299