Michael L. Rodenbaugh
California Bar No. 179059
Marie E. Richmond
California Bar No. 292962
RODENBAUGH LAW
25435 Hutchinson Road
Los Gatos, CA 95033
(415) 738-8087

Attorneys for Jeffery Dean Black

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY DEAN BLACK,<br><br>Plaintiff,<br>vs.<br><br>IRVING MATERIALS, INC.,<br><br>Defendant. | Case No. 5:17-cv-06734-LHK<br><br>**JEFFERY DEAN BLACK'S MOTION FOR ADDITIONAL FINDINGS; POINTS & AUTHORITIES IN SUPPORT THEREOF -- F.R.C.P. 52(b)** |
| IRVING MATERIALS, INC.,<br><br>Counter-Claimant,<br>vs.<br><br>JEFFERY DEAN BLACK,<br><br>Counter-Defendant. | **Date: January 9, 2020**<br>**Time: 1:30 p.m.**<br>**Courtroom: 8**<br><br>**Hon. Lucy Koh** |

## NOTICE OF MOTION FOR ADDITIONAL FINDINGS

TO DEFENDANT AND COUNTERCLAIMANT AND ITS ATTORNEYS OF RECORD, notice is hereby given that on January 9, 2020, in Courtroom 8, Plaintiff and Counterdefendant Jeffery Dean Black ("Mr. Black") will respectfully move that this honorable Court make Additional Findings that Mr. Black proved both his laches and "good faith" safe harbor defenses by a preponderance of the evidence at trial, consistent both with the jury's Verdict (Dkt. #190) and with the Court's Findings and Conclusions (Dkt. #199).

F.R.C.P. 52(b) allows the Court to make additional findings upon timely motion.  This motion is timely, and is brought in anticipation that Irving Materials, Inc. today may file a Notice of Appeal of the Court's Findings and Conclusions.  In such event, it would be necessary and useful for the Ninth Circuit to also have the requested Additional Findings.  This motion now extends the appeal deadline per F.R.A.P. 4(a)(4)(A)(ii).  Still, if Irving promises not to appeal and thus agrees to this Court's Judgment (Dkt. #200), then Mr. Black would withdraw this motion as moot.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.  INTRODUCTION; STATEMENT OF FACTS

F.R.C.P. 52(b) allows the Court to make additional findings upon timely motion.  This motion is timely, and is brought in anticipation that Irving Materials, Inc., today, may file a Notice of Appeal of the Court's Findings and Conclusions (Dkt. #199).  In such event, it would be necessary and useful for the Ninth Circuit to also have these requested Additional Findings.

Trial of this matter has established the following generally undisputed facts, proving both Mr. Black's laches and "good faith" safe harbor defenses.

1.      Irving knew of Black's alleged cybersquatting as least as early as September, 1998 when Irving's lawyers sent Black a draft federal lawsuit, alleging cybersquatting.  JX-6.

2.      In August 2002, Mr. Black published the directory website and 'for sale' page at the heart of Irving's cybersquatting claim.  JX-1, p.2-3; JX-7.

3.      In October 2017, Irving filed its UDRP complaint against Black, alleging cybersquatting.  JX-1, p.3.

4.      Irving has not offered any potentially reasonable excuse for its delay in reasserting its cybersquatting claim.  Irving's <u>only</u> purported excuse is that it did not notice Black's website since 2002, because Black did not tell him about it -- for some <u>fifteen years</u>.

5.      Black has been substantially prejudiced by the delay: (a) due to unavailability of evidence and witnesses that would have been available to him had the claim been timely asserted; and, (b) due to his reliance on the fact that no claim had been asserted by November 2016, when he formed his current company International Monetary Investments LLC.

6.      The Court found that Mr. Black was damaged in his defense against Irving for lack of documentary evidence that had long since been destroyed or lost, and from loss of pertinent testimony witnesses due to passage of time.  (Findings, p.13-14.)

7.      The Court also has found that Irving has caused significant harm to Mr. Black and to his International Monetary Investments business formed in November 2016, which would not have occurred had Irving brought its claim at any reasonable time prior to November 2016.  Upon

Irving's filing of its UDRP complaint in 2017, Mr. Black's domain registration was frozen per the procedural rules of the UDRP, such that he could not make changes to his website.  (Findings, p.13; 6/10/19 Tr. at 252:23–253:2; 6/11/19 Tr. at 301:22–302:1.)  Freezing of the domain was thus an automatic consequence of the UDRP filing, and certainly Irving and its counsel knew or should have known that would happen.  Moreover, the filing of the public UDRP complaint, accusing Mr. Black of cybersquatting, caused a venture capitalist to withdraw $10 million in funding for his business.  (Findings, p.13; 6/11/19 Transcript at 310:10–311:7.)

8.      Both the jury and the Court have found that Mr. Black did not act in "bad faith" as defined in the ACPA and alleged in Irving's cybersquatting counterclaim.  (Verdict, Dkt. #190; Findings, Dkt. #199, p.27-36).  In its Findings and Conclusions, the Court did not weigh any of the nine enumerated ACPA factors against Mr. Black, nor did it find any other purported "special circumstances" to indicate that Mr. Black has acted with anything other than objective and subjective reasonableness as to his possession and use of his domain name property.  Instead, this Court expounded for more than three pages of Factual Findings as to Mr. Black's good faith use of the domain name in the late 1990's. (Findings, Dkt. #199, p.2-5.)  This included his documented use in connection with his business Internet Marketing, Inc. and successor businesses, which his attorneys had advised was perfectly legal.  The Court also recognized Mr. Black's good faith in posting and operating the free directory website from 2002-2017, not-for-profit, accommodating requests from listed entities, and also pursuant to advice of counsel.  (*Id.*, p.9-10.)  And finally, the Court acknowledged Mr. Black's good faith incorporation of International Monetary Investments LLC, and operation of that business in good faith, under tight government and banking scrutiny, since late 2016.  (*Id.*, p.10.)

## 2.    ARGUMENT

Even if the jury or the Court had found that Black engaged in cybersquatting, a valid defense is that of laches.  Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court must not sleep on his rights.  Another valid defense is Mr. Black's reasonable and subjective "good faith" as defined as a safe harbor under the ACPA cybersquatting statute and controlling Ninth Circuit authorities.

### A. *Laches is Presumed, and Cannot Be Rebutted by Irving.*

In cases that involve trademarks, the statute of limitations is four years, and the limitations period runs from the time Irving knew or should have known about the asserted cause of action. *E.g., Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.,* 894 F.3d 1015 (9th Cir. 2018). The presumption of laches applies if **any** part of the claimed wrongful conduct occurred prior to the four-year limitation period. Accordingly, if the claim is filed after the limitations period has expired, the presumption is that the defense of laches is a bar to the claim. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) ("We hold that the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period. To hold otherwise would "effectively swallow the rule of laches, and render it a spineless defense."; "[t]he limitations period runs from the time the [claimant] knew or should have known about his . . . cause of action."); *Expert Microsystems, Inc. v. Univ. of Chicago*, 712 F. Supp. 2d 1116, 1120 (E.D. Cal. 2010) ("Once a defendant establishes a presumption of laches …, the burden shifts to the plaintiff to rebut the presumption of laches by offering evidence to show an excuse for the delay or that the delay was reasonable.") (internal quotations omitted).

Thus, if Irving knew or should have known of Black's registration and use of the Domain, and Irving delayed over four years to assert its claim, then the presumption of laches applies -- and Irving's claim for cybersquatting is barred.

Irving cannot overcome this presumption, because it did not establish by a preponderance of the evidence that:

(1) Irving's delay in reasserting its claim for cybersquatting was reasonable; and,

(2) Mr. Black has not suffered prejudice caused by the delay. Such prejudice can include loss of witnesses, documents and other evidence which would have been reasonably available had the claim been brought sooner, and loss or damage to Mr. Black's business or personal interests caused by Irving's delay in asserting its claim. *See, e.g., Danjaq, LLC v. Sony Corp*., 263 F.3d 942, 952 (9th Cir. 2001) (citations omitted) ("Courts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based. Evidentiary prejudice

includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died. A defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.")

Under no circumstances can it be reasonable for Irving to have delayed 15- or 19-years from Black's alleged bad faith conduct, prior to filing its UDRP complaint. *E.g., Jensen v. W. Irr. & Mfg., Inc.*, 650 F.2d 165, 168 (9th Cir. 1980) ("For purposes of laches the relevant time period begins to run when a patentee has either actual or constructive knowledge of the alleged infringement. A delay of six or more years triggers a presumption that the delay is unreasonable and shifts the burden to the plaintiff patentee to prove that the delay was excusable."); *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979) (holding that the bare fact of delay leads to presumption of prejudice).

Certainly, Irving did threaten a federal lawsuit over Black's alleged cybersquatting in 1998.  They knew about their claim then.  Also, Irving should have known at some point before October 2013 (four years prior to the UDRP complaint) that Black had launched a public website at IMI.com in 2002.  Otherwise, how can they claim to have suffered any harm from that website?  *See, e.g., Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1113–14 (C.D. Cal. 2010) ("In trademark cases, the Ninth Circuit appears to require evidence of actual harm in order to prove unclean hands.") (*citing Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 871 (9th Cir. 2002)).

It is beyond incredible for Irving to assert that it did not notice Black's website for more than 15 years -- and yet still had the gall to file a formal complaint with WIPO, without any attempt to first contact Mr. Black.  No Irving witness could possibly demonstrate that their 15-year delay in asserting a cybersquatting claim was reasonable.  They offer only the very flimsy excuse that Mr. Black didn't notify them of his website and sales offer -- and so they didn't notice for fifteen years, until their marketing firm apparently typed imi.com into a web browser.

Most certainly, it is not relevant that Mr. Black did not affirmatively contact Irving to tell them he was launching his website.  There is no evidence that he had any obligation to do so, either by his representation, any contract with Irving, or by function of law.  There is also no evidence that he made any effort to hide the website from Irving or anyone else.  It was published on the open web with the intention for people to find it when they typed imi.com into their browser, regardless of where those people were intending to go on the web.  Irving and its irvat.com website were always included in the free, public directory.

### B.   *Irving Cannot Claim that Black's Unclean Hands Bars His Laches Defense*

With respect to laches, "only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pinkette Clothing,* 894 F.3d at 1029 (affirming the district court's decision in declining to apply unclean hands as a defense to laches) (*quoting Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982)); *Pom Wonderful*, 737 F. Supp. 2d at 1113–14 (stating that the Ninth Circuit requires showing of actual harm to prove unclean hands).

The Ninth Circuit stated in *Jarrow* that "plaintiff can escape laches under the unclean hands doctrine only if the court is left with a firm conviction that the defendant acted with a fraudulent intent."  304 F.3d at 842 (*quoting Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 826 (9th Cir. 1999) (requiring "some affirmative showing by Hot Wax of some willful, egregious, or unconscionable conduct or bad faith on the part of Turtle Wax directly bearing on the availability of an equitable remedy such as laches").

Mr. Black's alleged bad faith conduct was public and out in the open since 2002, with no material change.  Nothing hindered Irving from bringing its claim at any time since then, and thus Mr. Black did not have any unclean hands that could justify Irving's 15+ year delay in filing suit.

Even if the jury verdict and/or any of the Court Findings had gone in Irving's favor, the bad faith discussed within the context of the ACPA does not rise to the level of bad faith required when a party seeks to assert unclean hands as a defense to the defense of laches. *S. Grouts &*

*Mortars, Inc. v. 3M Co.*, 2008 WL 4346798, at *7 (S.D. Fla. Sept. 17, 2008), *aff'd*, 575 F.3d 1235 (11th Cir. 2009). This is because unclean hands requires that the claimant demonstrate "<u>egregious</u>" conduct that "<u>significantly</u>" changes the equities. The court in *S. Grouts* stated:

> As unclean hands is an affirmative defense, even when used as a defense to a defense, SGM has the burden of proof. Fed.R.Civ.P. 8(c). "To succeed in an unclean hands claim, a plaintiff is required to show that the defendant has 'engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor.' " *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1361 (Fed. Cir. 2008) (*quoting A.C. Aukerman Co.*, 960 F.2d at 1033). As made clear by the Federal Circuit, the actions (or inactions) of the party alleged to have unclean hands <u>must exceed mere misconduct or neglect.</u> Instead, the conduct must be *egregious* and *significantly* change the equities, such as when a party asserting laches is <u>actually responsible for the delay in bringing suit, or where that same party engendered reliance by the opposing party through concealment or misrepresentation.</u>

*Id.* (finding plaintiff's cybersquatting claim was barred by laches where they delayed five years in bringing the claim); *see also Expert Microsystems, Inc.*, 712 F. Supp. 2d 1116, 1124 (E.D. Cal. 2010) (*quoting Serdarevic*, 532 F.3d at 1358 ("In an inventorship action, a plaintiff relying on the unclean hands doctrine to defeat a defense of laches must show not only that the defendant engaged in misconduct, but moreover that the defendant's misconduct was responsible for the plaintiff's delay in bringing suit.").

Indeed, numerous courts have stated that laches is an applicable defense to a claim for cybersquatting. *S. Grouts*, 2008 WL 4346798, at *7 (citing cases from the 2nd, 6th, and 7th Circuits); *see also AirFX.com v. AirFX LLC*, 2012 WL 1067935, at *3 (D. Ariz. Mar. 29, 2012) (applying a laches analysis as defense to ACPA claim on a motion for summary judgment); *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1035 (C.D. Cal. 2010) (applying laches defense in an ACPA case in the context of a motion for an injunction).

Moreover, courts have similarly addressed analogous situations within the patent context, holding that such an application of laches would render the defense non-existent and/or simply rehash elements of the original claim. *See e.g., Serdarevic*, 532 F.3d at 1362 ("If the failure to name an inventor were sufficiently "egregious conduct" to give rise to an unclean hands claim, then laches would never be available as a defense to an inventorship claim."; laches not precluded

by unclean hands); *Expert Microsystems, Inc.,* 712 F. Supp. 2d at 1124 ("Plaintiff's unclean hands defense fails because it simply rehashes the basis of its inventorship claims and does not indicate why any of defendants' alleged misconduct is responsible for plaintiff's delay in filing suit.").

      C.    *__Mr. Black Proved His ACPA Safe Harbor Defense.__*

The ACPA provides an absolute "safe harbor" defense to a cybersquatting claim: liability "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(B)(ii). The safe harbor may protect a defendant where the parties operate in entirely different fields. *See* 5 McCarthy on Trademarks and Unfair Competition § 25A:63 (5th ed.) ("If both parties are using the same designation as a mark but in very different product lines, then the defendant may have an objectively reasonable belief that it has a legitimate claim to using that designation as its domain name to sell its products.").

The Ninth Circuit has stated that the ACPA safe harbor defense is available to any domain owner that subjectively and reasonably believes their actions were undertaken in good faith. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1220 (9th Cir. 2012) (the ACPA provides a "safe harbor for any defendant who 'believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful,' 15 U.S.C. § 1125(d)(1)(B)(ii)").

Such a reasonable belief of good faith may be demonstrated where a domain owner uses the domain in connection with a legitimate business, is unaware of the mark owner at the time they register the domain, and/or is unable to locate a USPTO trademark record for the mark. In any of the above circumstances the domain owner's actions should be considered in "good faith". *Hartog & Co. AS v. SWIX.com*, 136 F. Supp. 2d 531, 541–42 (E.D. Va. 2001) (finding the domain owner was not a cybersquatter "within either the letter or the spirit of the ACPA" where he "believed that his use of the domain names in issue was fair and lawful, as well he could. . . .", the domain was essential to his business, he was unaware of plaintiff and he used the domain in connection with a legitimate business); *Pure Imagination, Inc. v. Pure Imagination Studios*, Inc.,

2004 WL 2967446, at *12 (N.D. Ill. 2004) (finding defendant's actions qualified for the safe harbor provision of the ACPA based on defendant's owner stating that he was unaware of plaintiff when it registered the domain and was unable to locate a purported pending USPTO application for the claimed mark); *Ormsby v. Barrett*, 2008 WL 53119, at *4–5 (W.D. Wash. Jan. 2, 2008) (declining to discuss the bad faith factors and finding that defendant acted with "abundant good faith" to thereby qualify for protection under the safe harbor).

In 2002, the Ninth Circuit in *Interstellar Starship Servs., Ltd. v. Epix, Inc.* stated:

> The district court found, however, that Tchou and ISS adopted the www.epix.com domain name in good faith. In particular, it determined that Tchou adopted the domain name epix.com as a descriptive term to connote electronic pictures. Evidencing his good faith, Tchou performed a web search on "epix" before registering epix.com, but did not find Epix because it was not yet on the Internet. Furthermore, Tchou engaged in a bona fide use of his website. To transform his website into a "widely known internet portal site," Tchou continuously used the domain name and invested money on hardware and software as well as significant amounts of time on the development of a viable business plan.

304 F.3d 936, 947 (9th Cir. 2002).

Indeed, a domain owner's affirmative good faith registration alone may be enough to entirely negate even a discussion of, let alone a finding of, bad faith. *Ormsby,* 2008 WL 53119, *4–5 (declining to discuss the bad faith factors and finding that defendant acted with "abundant good faith" to qualify for protection under the safe harbor). The Court in *Ormsby* further stated:

> No amount of discovery is going to change the fact that Defendants have been calling themselves the Wailers for decades, the Plaintiffs knew it, and the domain name registration predated the Plaintiffs' application for trademark registration. There is no evidence of bad faith on the Defendant's part, and the Plaintiffs' Cybersquatting claim must fail as a matter of law.

*Id.* Accordingly, even a finding that one (or more) statutory factors weigh against a domain owner clearly cannot negate the defense of good faith because "abundant good faith" is enough to trigger the defense. However, there were no such findings in this case.

In its Findings and Conclusions, the Court did not weigh any of the nine enumerated ACPA factors against Mr. Black, nor did it find any other purported "special circumstances" to

indicate that Mr. Black has acted with anything other than objective and subjective reasonableness as to possession of his domain name property.

Instead, this Court expounded for more than three pages of Factual Findings as to Mr. Black's good faith use of the domain name in the late 1990's.  (Findings, Dkt. #199, p.2-5.)  This included his documented use in connection with his business Internet Marketing, Inc. and successor businesses, which his attorneys had advised was perfectly legal.  The Court also recognized Mr. Black's good faith in posting and operating the free directory website from 2002-2017, not-for-profit, accommodating requests from listed entities, and also pursuant to advice of counsel.  (*Id.*, p.9-10.)  And finally, the Court acknowledged Mr. Black's good faith incorporation of International Monetary Investments LLC, and operation of that business in good faith, under tight government and banking scrutiny, since late 2016.  (*Id.*, p.10.)

Even had the Court weighed any of the bad faith factors against Mr. Black, courts have made clear that the analysis undertaken pursuant to the ACPA bad faith statutory factors are not dispositive as to, nor do they prevent a finding of good faith under the safe harbor of 15 U.S.C. § 1125(d)(1)(B)(ii).  *E.g.*, *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1226 (11th Cir. 2012):

> Regardless of how many statutory factors the evidence establishes, Eastern Shore cannot be liable for registering or using the Bob Tyler trademark with a bad faith intent to profit if it nonetheless "believed and had reasonable grounds to believe that the use of the domain name was ... lawful."

(*quoting* § 1125(d)(1)(B)(ii)); s*ee also, id.*, at 1229 (distinguishing *Lahoti,* 586 F.3d at 1203 ("[A] reasonable person who had previously been declared a cybersquatter in a judicial proceeding [ ] should have known that his actions might be unlawful.")); *TMI, Inc. v. Maxwell*, 368 F.3d 433, 440 (5th Cir. 2004) (finding good faith despite weighing at least four ACPA factors against the defendant -- "we particularly note that Maxwell's conduct is not the kind of harm that ACPA was designed to prevent"); *see also e.g., Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWX), 2015 WL 5311085, at *51 (C.D. Cal. Sept. 10, 2015) (finding that defendant "should be afforded immunity under the ACPA's safe harbor provision" where eight of

the factors weigh in its favor and the remaining factor is neutral); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1058 (10th Cir. 2008) (declining to address all the bad faith statutory factors and finding that the safe harbor applied, stating: "It is not necessary to evaluate all of the factors because several of the factors readily defeat an inference that the Defendants intended to profit by using domain names similar to UTLM's trademark.").

Therefore, Mr. Black's conduct objectively and subjectively falls within the "good faith" safe harbor provided by the ACPA, and so the Court should find that this affirmative defense bars Irving's cybersquatting counterclaim.

**3.    CONCLUSION**

For all of the foregoing reasons, and solely for purposes of assisting Ninth Circuit review in the event Irving appeals the jury verdict and/or the Court's Judgment, Mr. Black respectfully requests the Court to enter additional findings under Rule 52(b) -- that Mr. Black proved by a preponderance of substantial evidence that Irving's cybersquatting claim is barred both by laches and by Mr. Black's ACPA "good faith" safe harbor defense.


DATED: September 9, 2019                    Respectfully submitted,


                                             /s/ *Mike Rodenbaugh*
                                            Michael L. Rodenbaugh
                                            California Bar No. 179059
                                            RODENBAUGH LAW
                                            548 Market Street, Box No. 55819
                                            San Francisco, CA 94104

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

By: /s/ *Mike Rodenbaugh*
Mike Rodenbaugh
RODENBAUGH LAW
584 Market Street
Box 55819
San Francisco, CA  94014
Tel/fax:  (415) 738-8087